[Civ. No. 41175. First Dist., Div. Three. Feb. 22, 1978.]

LEOPOLDO GONZALES LERMA, Plaintiff and Appellant, v.
D'ARRIGO BROTHERS COMPANY OF CALIFORNIA,
Defendant and Respondent.

**COUNSEL**

Jerome Cohen, Sanford N. Nathan, Mary H. Mocine and John Rice-Trujillo for Plaintiff and Appellant.

Dressler, Stoll & Jacobs, Wayne A. Hersh and Donald G. Dressler for Defendant and Respondent.

## OPINION

FEINBERG, J.—This is an appeal from a judgment dismissing an amended complaint brought by an agricultural employee against his employer predicated upon the trial court having sustained a demurrer to the amended complaint.

Taking the allegations of the amended complaint as true, as we must, the facts are that appellant was an agricultural laborer, a member of the Western Conference of Teamsters and Teamsters Farm Worker Local 1973 (Union). In 1974, appellant was employed by respondent D'Arrigo Brothers Company (D'Arrigo). Union and D'Arrigo had entered into a collective bargaining agreement in May 1973 effective until July 15, 1975, whereby Union became the exclusive bargaining agent for D'Arrigo employees.

The agreement provided, inter alia, for the resolution of disputes or grievances arising under the agreement by final and binding arbitration. On October 14, 1974, appellant was discharged by D'Arrigo. On April 3, 1975, appellant filed an action against D'Arrigo and Union in the Superior Court of Monterey County in two counts. In substance, the first count alleged that appellant had been discharged in violation of the terms of the agreement; that respondent had acted maliciously in so doing; and that appellant had exhausted all internal remedies provided for in the agreement. The second count alleged that Union had breached its duty of fair representation to appellant by refusing to entertain and prosecute appellant's grievance against D'Arrigo and that such breach was malicious. Appellant prayed that D'Arrigo be required to reinstate him on the job, that special, general and exemplary damages be awarded against both D'Arrigo and Union, and that reasonable attorney fees, litigation expenses and costs be granted.

Both D'Arrigo and Union demurred. On or about September 3, 1976, the trial court entered its order sustaining the demurrer as to D'Arrigo on the grounds that (1) appellant had not pursued arbitration in accordance with the agreement, (2) appellant had not exhausted his administrative remedies nor had he been prevented from so doing. Appellant was given leave to amend. As to Union, the demurrer was overruled.

In the meantime, between the filing of the complaint by appellant (April 1975) and the trial court's ruling on the demurrers (September 1976), appellant's grievance did go to arbitration pursuant to the

agreement, for on July 18, 1975, an arbitration award was issued sustaining D'Arrigo and denying reinstatement to appellant.

On September 21, 1976, appellant filed his amended complaint. The amended complaint in substance repeats the allegations of the complaint but includes an allegation that appellant fully complied with the arbitration provision of the agreement and that the arbitration award had been in favor of D'Arrigo.

Thereafter, D'Arrigo demurred to the amended complaint. The demurrer was sustained, with leave to amend, on the ground that "the . . . [appellant's] contentions were adjudicated in arbitration proceedings held under an applicable collective bargaining agreement. [¶] The cause of action against D'Arrigo does not purport to allege facts necessary to vacate the award. Nor has the . . . [appellant] met the time requirements of *C.C.P. Section 1288.* [¶] *Hines* v. *Anchor Motor Freight, Inc.* [424 U.S. 554], 47 L.Ed.2d 231 [96 S.Ct. 1084], is not persuasive since that action was brought under *Section 301 of the Labor Management Relations Act, 29 USC Section 185.*" Appellant did not amend. A judgment of dismissal of the complaint against D'Arrigo was thereupon entered.

■ Under federal law where a union has breached its duty to fairly represent the employee in the grievance procedure and where the arbitrator held in favor of the employer, the employee may bring suit against both the union and the employer without the restrictions ordinarily imposed upon an attack on an arbitration award. (See *Hines* v. *Anchor Motor Freight* (1976) 424 U.S. 554, 571-572 [47 L.Ed.2d 231, 245-246, 96 S.Ct. 1048]; *Vaca* v. *Sipes* (1967) 386 U.S. 171, 184-185 [17 L.Ed.2d 842, 854, 87 S.Ct. 903].) In *Lehto* v. *Underground Constr. Co.* (1977) 69 Cal.App.3d 933 [138 Cal.Rptr. 419], this court, relying on *Hines* v. *Anchor Motor Freight, supra,* 424 U.S. 554, held that in an action which could have been brought in the federal courts under section 301 of the Labor Management Relations Act (29 U.S.C. § 185), California arbitration statutes "may not be employed to preclude a suit against the employer and the union to set aside an arbitration award when it is alleged that the award was erroneous and the product of a dishonest, bad faith or discriminatory representation by the employee's union." (*Lehto* v. *Underground Constr. Co., supra,* 69 Cal.App.3d at p. 943.)

Respondent correctly points out and appellant concedes that the federal cases leading up to and including *Hines, supra,* that found a duty of fair representation arose when the Union had acquired the exclusive

right to collectively bargain by certification pursuant to federal statutory authority. Finding a *statutory* right, these courts imported a statutory duty of fair representation. (See *Vaca* v. *Sipes, supra,* at p. 177 [17 L.Ed.2d at p. 850].) Similarly, in *Lehto, supra,* 69 Cal.App.3d 933, the union was certificated under federal law and California courts were exercising a concurrent jurisdiction with federal courts. As the *Lehto* court said: "Thus, the crux of the instant case is whether California's statutory limitations on judicial review of arbitration awards effectively deprive appellant of his substantive rights under federal law, especially section 301 of the Labor Management Relations Act as applied and interpreted in *Hines* v. *Anchor Motor Freight* (1976) 424 U.S. 554." (At p. 943 of 69 Cal.App.3d.)

There is no federal statutory procedure for union certification applicable here since agricultural laborers are specifically excluded from the purview of the Labor Management Relations Act, 1947, as amended. We note, too, that the Agricultural Relations Act of 1975 (Stats. 1975, Third Ex. Sess., ch. 1, § 2, p. 4013) is not applicable since the collective bargaining agreement and the discharge of appellant preceded its enactment.

Respondent contends that the duty of fair representation applies *only* when a union has become an exclusive bargaining agent by statutory certification. Appellant asserts there is a duty of fair representation whenever a union is the exclusive bargaining agent whether it became such under statutory aegis or by contract.

*Is there a duty of fair representation by a union to its members who are employed by an employer with whom the union has an exclusive collective bargaining agreement and there is no statute providing for certification of the union as the exclusive collective bargaining agent for the employer's workers?*

We conclude there is.

*First,* the closeness in public policy expressed in California and federal statutory law makes federal decisional law most persuasive. California Labor Code section 923 expresses a public policy with regard to labor organization similar to that announced in sections 151 and 157 of the Labor Management Relations Act, 1947, as amended, and is derived from the same source. (*Escamilla* v. *Marshburn Brothers* (1975) 48 Cal.App.3d 472, 481-482 [121 Cal.Rptr. 891].) The parallel policies underlying section 923 and the corresponding federal statutes have led

California courts to apply federal law doctrines in cases where no facts were alleged to bring the case under federal law. For example, in *Holayter* v. *Smith* (1972) 29 Cal.App.3d 326 [104 Cal.Rptr. 745], the court had to decide whether or not to follow the "*Wiley* doctrine," enunciated in *John Wiley & Sons* v. *Livingston* (1964) 376 U.S. 543 [11 L.Ed.2d 898, 84 S.Ct. 909], which held that where there is substantial similarity of operation after merger, a successor employer can be required in a suit brought under section 301 of the Labor Management Relations Act of 1947, as amended, to arbitrate a dispute with the union which signed a contract with the predecessor employer. After noting that the case did not come within the ambit of the federal statutes because the dispute had no relation to interstate commerce, the court held that the "*Wiley* doctrine" was applicable in California because Labor Code section 923 reflected the same public policy as that reflected in the federal statutes. (29 Cal.App.3d at p. 335, see also *Knopf* v. *Producers Guild of America, Inc.* (1974) 40 Cal.App.3d 233, 247 [114 Cal.Rptr. 782]; *Nahas* v. *Local 905, Retail Clerks Assn.* (1956) 144 Cal.App.2d 808, 813 [301 P.2d 932, 302 P.2d 829].)

Similarly, because "the statutory declarations of policy found in the federal act (29 U.S.C. § 157) and in our Labor Code, section 923, are substantially the same," (fns. omitted) (*Nahas* v. *Local 905, Retail Clerks Assn., supra,* at p. 813), *Hines* v. *Anchor Motor Freight, supra,* 424 U.S. 554, the leading federal case defining the duty of fair representation is applicable here despite the fact that the federal statutory law does not apply because agricultural employees are involved.

*Second,* policy reasons dictate that when a union is the exclusive bargaining agent, it must represent all the employees fairly and without discrimination. The duty of fair representation is a doctrine which has been developed by the federal courts by reasoning that the right to be the exclusive bargaining agent carries with it "a statutory obligation to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." (*Vaca* v. *Sipes, supra,* 386 U.S. at p. 177 [17 L.Ed.2d at p. 850].) If a union is allowed to treat grievances discriminatorily, then some employees will have no redress for grievances they suffer because the only mechanism for remedying these grievances is through union channels.

We cannot find nor have we been directed by counsel to any California case directly in point. But, while California courts seem not to

have yet articulated a duty of fair representation, they have recognized the principle of nondiscriminatory treatment by the union. In *James v. Marinship Corp.* (1944) 25 Cal.2d 721 [155 P.2d 329, 160 A.L.R. 900], black shipbuilders were excluded from membership in a labor union which had a closed shop agreement with the employer. Despite the absence of a statute covering such conduct, the court held that Negroes must be admitted to membership in the union under the same terms applicable to non-Negroes unless the union and the employer refrain from enforcing the closed shop agreement between them. (25 Cal.2d at p. 745.) The court stated: "Where a union has, as in this case, attained a monopoly of the supply of labor by means of closed shop agreements and other forms of collective labor action, such a union occupies a quasi public position similar to that of a public service business and it has certain corresponding obligations." (25 Cal.2d at p. 731.) Consequently, a union acting as the exclusive bargaining agent should have the same obligation under California law, as it has under federal law, of representing the laborers fairly and without discrimination.

The right to be the exclusive bargaining agent in this case did arise by contract while the right to be the exclusive bargaining agent in the federal cases articulating the duty of fair representation arose through statute. However, the relevant consideration to the duty of fair representation is the exclusive nature of the right to be the bargaining agent, not the source of the right. (See *Kuhn v. Nat. Ass'n of Letter Carriers, Branch 5* (8th Cir. 1976) 528 F.2d 767, 770.)

Respondent cites *Englund v. Chavez* (1972) 8 Cal.3d 572, 595-597 [105 Cal.Rptr. 521, 504 P.2d 457], for the proposition that California had opted for a "laissez-faire" policy by failing to provide for a procedure whereby employees could democratically and peacefully select their own bargaining representatives protected by the shield of the state's power. This is all the more reason for holding that a duty of fair representation obtains under the circumstances present here. In the relevant cases arising under the Labor Management Relations Act of 1947, as amended, and the predecessor federal statutes thereto, the union that denied its member fair representation was at least a union that the member had an opportunity to vote for or against, as the case might be. In the case at bench, the employee never had a chance to vote on what union, if any, he wished to represent him in collectively bargaining with his employer. Thus, if respondent's position is correct, appellant, in attempting to secure redress, is now bound by an arbitration proceeding wherein he was unfairly represented by an exclusive bargaining agent in

whose selection neither he nor any other employee of respondent ever had a choice. We cannot and do not agree to such a proposition.

■ Since we have concluded that there is a duty of fair representation, our decision in *Lehto, supra,* 69 Cal.App.3d 933, is dispositive of the issues. If appellant was denied fair representation by Union in appellant's attempt to secure redress of his grievance against D'Arrigo, then he is neither bound by the arbitrators' decision nor is subject to the limitations of Code of Civil Procedure section 1288. "[T]he California arbitration statute may not be employed to preclude a suit against the employer and the union to set aside an arbitration award when it is alleged that the award was erroneous and the product of a dishonest, bad faith or discriminatory representation by the employee's union. Where a union has breached its duty of fair representation, the policy promoting finality of the arbitration award does not preclude a judicial action by the employee to enforce the collective bargaining agreement." (*Lehto, supra,* 69 Cal.App.3d at p. 943.)

In holding as we do, we make it clear that we are creating no new cause of action. In the absence of a binding arbitration clause in the agreement, appellant would have been free to pursue his remedies at law (*Sublett* v. *Henry's etc. Lunch* (1942) 21 Cal.2d 273, 275 [131 P.2d 369]; *Div. of Lab. Law Enforcement* v. *Dennis* (1947) 81 Cal.App.2d 306, 309 [183 P.2d 932]) without regard to the statutory provisions on arbitration (Code Civ. Proc., § 1280 et seq.).

We make clear, too, that in the event this case goes to trial, the threshold issue with regard to the cause of action against respondent is whether Union breached its duty of fair representation. If it did, then, and only then, will the trial court reach the merits of appellant's cause of action against respondent.

The judgment is reversed.

Scott, Acting P. J., and King, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.