[Civ. No. 66261. Second Dist., Div. Seven. Dec. 12, 1983.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 193, AFL-CIO, Plaintiffs and Appellants, v. HOLLYWOOD PARK, INC., et al., Defendants and Respondents.

746

748

750

COUNSEL

Van Bourg, Allen, Weinberg & Roger and W. Daniel Boone for Plaintiff and Appellants.

O'Melveny & Myers, Stephen P. Pepe, Iverson, Yoakum, Papiano & Hatch and Arnold D. Larson for Defendants and Respondents.

OPINION

THOMPSON, J.—This is an appeal from a judgment of dismissal entered upon the sustaining of demurrers without leave to amend. The central issue on appeal is whether a union whose recognition is withdrawn under the circumstances of this case can state a cause of action for damages despite the lack of compulsory bargaining in California. For reasons to follow, we hold that a union can state a cause of action for damages under the California Labor Code.[1]

Plaintiffs are 92 racetrack security guards (individual plaintiffs) and the Service Employees International Union Local 193, AFL-CIO (SEIU), the labor association that represents them. Defendants are Hollywood Park, the Los Angeles Turf Club (Turf Club), the Federation of California Racing Associations (Federation) and the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Local 495 (Teamsters).[2]

For at least 25 years prior to April 1979, the terms and conditions of employment of the racetrack security guards were determined by successive collective bargaining agreements with SEIU, which was the recognized bargaining agent of the employees. The most recent written collective bargaining agreement expired on April 10, 1979.

After a strike was called by SEIU on April 11, 1979, the Teamsters were recognized by the other defendants as the exclusive collective bargaining representative of the race track security guards. A collective bargaining agreement with the Teamsters was subsequently executed and individual plaintiffs' employment at the racetrack was conditioned on joining the Teamsters, designating the Teamsters as their bargaining representative and withdrawing from SEIU.

---

[1] Unless otherwise indicated, all statutory references are to the Labor Code.

[2] The individual plaintiffs and the Teamsters are not parties to this appeal.

According to the allegations of the second amended complaint, the individual plaintiffs were security guards regularly employed by defendants during annual racing meets and were members of SEIU which was their sole, authorized bargaining representative. The Federation was a private association composed of 15 racing associations, including Hollywood Park and Santa Anita Park which was operated by the Los Angeles Turf Club. For over 25 years, SEIU and the employer defendants had maintained a collective bargaining relationship, including execution of collective bargaining agreements concerning terms and conditions of individual plaintiffs' employment. Although the last collective bargaining agreement expired on April 10, 1979, "the Agreement to recognize [SEIU] as the collective bargaining agent of said employees has never expired" and employer defendants continue to be obligated, as they have been for more than 25 years, to collectively bargain with SEIU.

The first cause of action further alleged that, in violation of the public policies set forth in sections 923[3] and 1117,[4] employer defendants had (1) unilaterally refused to recognize SEIU as the bargaining representative of their employee security guards despite their continuing obligation to do so; (2) unlawfully interfered with and dominated defendant Teamsters, illegally entering into discussions with respect to the security guards' wages, hours, and conditions of employment; and (3) discharged and refused to rehire the individual plaintiffs solely "to deny, prevent and interfere" with the exercise of the rights guaranteed them in section 923. It was further alleged that

---

[3]Section 923 provides: "[T]he public policy of this State is declared as follows: "Negotiation of terms and conditions of labor should result from voluntary agreement between employer and employees. Governmental authority has permitted and encouraged employers to organize in the corporate and other forms of capital control. In dealing with such employers, the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore, it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of his employment, and that he shall be free from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."

[4]Section 1117 provides: "As used herein, 'labor organization' means any organization or any agency or employee representation committee or any local unit thereof in which employees participate, and exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, hours of employment or conditions of work, which labor organization is not found to be or to have been financed in whole or in part, interfered with, dominated or controlled by the employer or any employer association within one year of the commencement of any proceeding brought under this chapter. The plaintiff shall have the affirmative of the issue with respect to establishing the existence of a 'labor organization' as defined herein.

"As used herein, 'person' means any person, association, organization, partnership, corporation, unincorporated association, or labor organization."

the individual plaintiffs are entitled to compensatory damages because of their discharge in violation of section 923 and that plaintiffs are also entitled to punitive damages.

The second cause of action incorporated all the allegations of the first cause of action and asserted that in violation of sections 1050[5] and 1054,[6] all of the defendants are by misrepresentation preventing employment of the individual plaintiffs, "effectively maintaining a blacklist" against said employees solely because of their activities which are protected under section 923.

The third cause of action incorporated all the allegations of the prior two causes of action and it further alleged that in violation of section 1122,[7] the employer defendants have financed, interfered with, dominated or controlled defendant Teamsters, conditioned individual plaintiffs' employment at their racetracks as security guards on their joining Teamsters, knowing that the Teamsters are unauthorized and unwanted by the individual employees, and refused each individual plaintiff employment in his prior position as a security guard solely because of his refusal to designate any bargaining representative other than SEIU.

The fourth cause of action incorporated all the preceding allegations and additionally asserted that in violation of section 922,[8] employer defendants have refused to reinstate individual plaintiffs to employment unless they repudiate designation of SEIU as their bargaining representative.

The fifth cause of action incorporated all prior allegations. It further alleged that all of the defendants have, "by means of restraint, coercion, or

[5]Section 1050 provides: "Any person, or agent or officer thereof, who, after having discharged an employee from the service of such person or after having paid off an employee voluntarily leaving such service, by any misrepresentation prevents or attempts to prevent the former employee from obtaining employment, is guilty of a misdemeanor."

[6]Section 1054 provides: "In addition to and apart from the criminal penalty provided any person or agent or officer thereof, who violates any provision of sections 1050 to 1052, inclusive, is liable to the party aggrieved, in a civil action, for treble damages. Such civil action may be brought by such aggrieved person or his assigns, or successors in interest, without first establishing any criminal liability under this article."

[7]Section 1122 provides: "Any person who organizes an employee group which is financed in whole or in part, interfered with or dominated or controlled by the employer or any employer association, as well as such employer or employer association, shall be liable to suit by any person who is injured thereby. Said injured party shall recover the damages sustained by him and the costs of suit."

[8]Section 922 provides: "Any person or agent or officer thereof who coerces or compels any person to enter into an agreement, written or verbal, not to join or become a member of any labor organization, as a condition of securing employment or continuing in the employment of any such person is guilty of a misdemeanor."

interference," forced individual plaintiffs to withdraw from membership in and association with SEIU and prevented them from freely designating SEIU as their bargaining representative; and the employer defendants have discontinued recognition of SEIU as the security guards' representative solely because of SEIU's activities and conduct which are protected under section 923.

Defendants demurred to the second amended complaint on the ground that (1) SEIU had failed to state a cause of action, and (2) the Federation was misjoined as a defendant since it was not alleged to be an employer of security guards. The court sustained the demurrers without leave to amend.

*Issues*

The issues presented by this appeal are: (1) Should the decision be affirmed under the doctrines of res judicata and collateral estoppel? (2) Was the Federation properly dismissed from the lawsuit? and (3) Was SEIU properly dismissed as a plaintiff?

### *The Doctrines of Res Judicata or Collateral Estoppel Are Not Applicable*

 Defendants contend that "the Demurrers should be sustained on the bases of res judicata and collateral estoppel." Defendants argue that SEIU is bound by the court's prior decision in November 1979 in another proceeding (Case No. 285035) sustaining demurrers to SEIU as a plaintiff and Federation as a defendant because SEIU neither amended that complaint nor appealed the sustaining of the demurrers. We disagree.

In May 1979, SEIU and eight of the individual plaintiffs herein had filed a complaint alleging two causes of action in the Los Angeles Superior Court (Case No. 285035) against the Federation, Hollywood Park and the Turf Club. On November 26, 1979, the court sustained a demurrer by the Federation on the ground that the Federation was misjoined as a party because it was not an employer of security guards. The court also sustained a demurrer by all three defendants with respect to the SEIU, concluding that SEIU "does *not* state facts sufficient to constitute causes of action as to itself under Labor Code Section 923 or Labor Code Section 1050." The demurrers were sustained with leave to amend. No amendments were offered. Nor was any judgment of dismissal ever entered.

 " 'The doctrine of *res judicata* gives certain *conclusive effect* to a *former judgment* in subsequent litigation involving the same controversy

. . . .' The doctrine applies basically to all types of final judgments that are rendered on the merits of litigation. [Citation.] It may apply to a final judgment, i.e., a dismissal, even though entered after sustaining a demurrer, if the demurrer was sustained on substantive grounds." (*Shuffer* v. *Board of Trustees* (1977) 67 Cal.App.3d 208, 216 [136 Cal.Rptr. 527]; italics in original.) Of course, "the res judicata effect of a judgment of dismissal . . . after the sustaining of a demurrer is of limited scope" since if " 'new or additional facts are alleged that cure the defects in the original pleading, it is settled that the former judgment is not a bar to the subsequent action whether or not plaintiff had an opportunity to amend his complaint.' " (*Wells* v. *Marina City Properties, Inc.* (1981) 29 Cal.3d 781, 789 [176 Cal.Rptr. 104, 632 P.2d 217].)

The second amended complaint herein is far more detailed and contains more causes of action than the original complaint in the other proceeding. We need not, however, compare the two complaints to ascertain whether the original defects have been cured. ■ The res judicata doctrine only applies when there is a final judgment. (See 4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, §§ 147-148, pp. 3292-3294; *Grable* v. *Citizens Nat. Trust & Sav. Bank* (1958) 164 Cal.App.2d 710, 714 [331 P.2d 103].)

■ We cannot construe the November 1979 demurrer as a final judgment on the merits. There is no showing that a judgment was ever rendered. The record does not reflect any order of dismissal or judgment by the court subsequent to his November 26, 1979 minute order. While an action may be dismissed upon the motion of either party "when, after a demurrer to the complaint has been sustained with leave to amend, the plaintiff fails to amend it within the time allowed by the court. . . ." (Code Civ. Proc., § 581, subd. 3), all dismissals ordered by the court must be "in the form of a written order signed by the court and filed in the action" (Code Civ. Proc., § 581d). It is the filed order which constitutes a judgment and is effective for all purposes. (*Ibid.*)

A judgment has been defined as "any judgment, order or decree from which an appeal lies." (Cal. Rules of Court, rule 136(g).) ■ But an order sustaining a demurrer is not appealable. (*Dollar-A-Day Rent-A-Car Systems, Inc.* v. *Pacific Tel. & Tel. Co.* (1972) 26 Cal.App.3d 454, 456, fn. 1 [102 Cal.Rptr. 651].) "It is only by the entry of the judgment that plaintiff is in a position to test the correctness of the court's ruling since there is no appeal from a ruling on a demurrer but only from the ensuing judgment." (*Berri* v. *Superior Court* (1955) 43 Cal.2d 856, 860 [279 P.2d 8].) ■ Accordingly, the trial court's rulings herein cannot be affirmed upon the grounds of res judicata or collateral estoppel.

### Dismissal of the Federation
### as a Defendant Was Improper

SEIU contends that the trial court erred in dismissing the Federation as a defendant. The demurrer was argued and sustained without leave to amend on the ground of misjoinder of parties (Code Civ. Proc., § 430.10, subd. (d)) because the Federation was not an employer.

In reviewing a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we must treat the demurrer as admitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 [122 Cal.Rptr. 745, 537 P.2d 865]; *Glaire* v. *La Lanne-Paris Health Spa, Inc.* (1974) 12 Cal.3d 915, 918 [117 Cal.Rptr. 541, 528 P.2d 357].) We must liberally construe the allegations of the complaint with a view to attaining substantial justice among the parties. (*Ibid.*) It is error to sustain a demurrer where a plaintiff has stated a cause of action under any possible legal theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 [101 Cal.Rptr. 745, 496 P.2d 817]; *Bush* v. *California Conservation Corps.* (1982) 136 Cal.App.3d 194, 200 [185 Cal.Rptr. 892].)

Although the complaint is not a model of pleading, plaintiffs have sufficiently alleged that the Federation was an employer or functioned as an employer of security guards. The complaint specifically designates the Federation, Hollywood Park and the Turf Club as the "Employer Defendants." It distinguishes these three defendants from the remaining defendant, the Teamsters. The Teamsters, by contrast, is identified as an unincorporated association purporting to represent security guards employed by the other named defendants. The complaint alleges that the security guards were regularly and traditionally employed at the racing meets and "perform[ed] security services for the employer defendants and each of them." The complaint further alleges that each of the employer defendants had maintained a collective bargaining relationship with SEIU for over 25 years and had committed the alleged violations of public policy.

While we recognize that "a demurrer does not admit facts judicially known to be false" (*Everett* v. *Everett* (1976) 57 Cal.App.3d 65, 68, n. 3 [129 Cal.Rptr. 8]), we are not persuaded by the Federation's argument on appeal that we should disregard these allegations because the trial court could have taken judicial notice that the Federation was not an employer. The Federation's claim that it is not a racetrack and therefore does not employ security guards is not a judicially noticeable fact of "such common knowledge" that it is "not reasonably subject to dispute." (Evid. Code,

§ 452, subds. (g), (h).) And, although a court is entitled to take judicial notice of its court records (Evid. Code, § 452, subd. (d)), the documents filed by the Federation in support of the summary judgment motion did not constitute admissions by plaintiffs that the Federation was not an employer. Indeed, the plaintiffs submitted opposing declarations alleging that the Federation performed employment functions, controlling who was hired and who was blacklisted.

 Moreover, an allegation that the Federation was an employer was unnecessary for proper joinder of the Federation as a defendant in this lawsuit. The complaint directly alleged that the Federation was an employer association. The third cause of action alleged that plaintiffs were damaged by the Federation's interfering with and/or dominating the Teamsters in violation of section 1122. That section explicitly provides that any "employer or any *employer association*" that interferes with or dominates an employee group "shall be liable to suit by any person who is injured thereby." (Italics added.) Thus, the Federation was properly joined as a defendant since a right to relief was asserted against it arising out of the same transaction, with at least one question of law or fact common to all the other defendants. (Code Civ. Proc., § 379, subd. (a)(1).)

Under our liberal joinder rules, the Federation need not be involved in all the causes of action for proper joinder. (Code Civ. Proc., § 379, subd. (b).) Where, as here, the pleadings state facts from which any liability results, even though not for all of the relief sought to be obtained, a demurrer should not be sustained. (*Siciliano* v. *Fireman's Fund Ins. Co.* (1976) 62 Cal.App.3d 745, 751 [133 Cal.Rptr. 376].)

Accordingly, the court erred in dismissing the Federation as a defendant.

*SEIU Was Improperly Dismissed as a Plaintiff*

SEIU claims that the trial court erred in sustaining the demurrer to all its causes of action and dismissing it as a plaintiff.[9]

Even though SEIU did not allege that it was suing on behalf of its members who were security guards and the 92 directly affected members are individually named as plaintiffs, SEIU could still have standing to sue as an entity for any damage done to the union. (See *Professional Fire Fighters, Inc.* v. *City of Los Angeles* (1963) 60 Cal.2d 276, 285 [32 Cal.Rptr. 830,

---

[9]No demurrer was sustained against the individual plaintiffs who are still in the lawsuit.

384 P.2d 158].) Defendants, however, claim that SEIU cannot state any cause of action under California law.

■ This action is governed by California law since the NLRB has declined to extend federal jurisdiction over the horse racing industry. (29 C.F.R. § 103.3.) Instead of comprehensive state regulation, California has basically followed a policy in the labor field "of laissez-faire, a posture which has generally left the resolution of labor disputes to 'the free interaction of economic forces.'" (*Englund* v. *Chavez* (1972) 8 Cal.3d 572, 584 [105 Cal.Rptr. 521, 504 P.2d 457].) The state statutory provisions in this field have "primarily attempted to ensure a parity between the opponents in labor disputes—*explicitly recognizing rights of* employees and *labor organizations* comparable to those of employers, who in earlier days were favored recipients of many legal benefits." (*Ibid.,* italics added.)

■ Of course, "[t]he right of self-organization and of selection of a bargaining representative are rights which exist independently of labor relations acts. The existing right includes union organization for the conduct of collective bargaining and the traditional peaceful strike for higher wages. [Citation.] It was characterized and recognized as a fundamental right long before it was protected under the National Labor Relations Act and similar state acts." (*Safeway Stores* v. *Retail Clerks, etc. Assn.* (1953) 41 Cal.2d 567, 573 [261 P.2d 721].)

■ Section 923 codifies the state public policy and was intended "'to balance the industrial equation, so far as it is possible to do so, by placing employer and employee on an equal basis.'" (*Englund* v. *Chavez, supra,* 8 Cal.3d at p. 585, quoting *Shafer* v. *Registered Pharmacists Union* (1940) 16 Cal.2d 379, 385 [106 P.2d 403].) Although neither section 923 nor any other state law specifically imposes upon an employer an affirmative duty to bargain, that section declares a public policy in favor of the collective bargaining process. (*American Radio Assn.* v. *Superior Court* (1965) 237 Cal.App.2d 891, 896 [47 Cal.Rptr. 419]; see also *Shafer* v. *Registered Pharmacists Union, supra,* 16 Cal.3d 379.) In fact, passage of that section was the result of organized labor's efforts to extend and safeguard the principles of collective bargaining. (*Ibid.*)

Section 923 announces it is the public policy of this state to uphold the freedom of employees to organize and enter into collective bargaining contracts for their own protection. (*Petri Cleaners, Inc.* v. *Automotive Employees, etc. Local No. 88* (1960) 53 Cal.2d 455, 470 [2 Cal.Rptr. 470, 349 P.2d 76].) It expressly recognizes that the rights of labor must be guaranteed because "[i]n dealing with . . . employers, the individual unorganized

worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment." (§ 923.) Accordingly, it guarantees employees "full freedom of association, self-organization, and designation of representatives of his own choosing." (*Ibid.*) Furthermore, the policy stated therein explicitly includes protection "from the interference, restraint, or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." (*Ibid.*) ▮ Freedom from such interference is as much a part of labor's fundamental rights as is the right to associate and organize. (*Knopf* v. *Producers Guild of America, Inc.* (1974) 40 Cal.App.3d 233, 246 [114 Cal.Rptr. 782].)

Although California has generally followed a noninterventionist policy, "in a few selected areas the Legislature has moved to proscribe specific tactics of both labor and management, tactics with detrimental consequences which clearly outweigh any possible social benefit." (*Englund* v. *Chavez, supra,* 8 Cal.3d at p. 585.) The statutes cited in the complaint herein are examples of particular enactments prohibiting such management tactics as yellow dog contracts (e.g., § 922), blacklisting (§§ 1050, 1054) and employer interference (§ 1122).

Defendants, however, argue that all of SEIU's causes of action are premised on the refusal to bargain which is not actionable under our Supreme Court's decision in *Petri Cleaners, Inc.* v. *Automotive Employees, etc. Local No. 88, supra,* 53 Cal.2d 455. We disagree.

*Petri* involved the issue of initial recognition of a union wherein an employer sought an injunction to restrain an outside union from picketing and the union sought an injunction to compel the employer to recognize and bargain with it. Our Supreme Court held that neither was entitled to enlist the state's injunctive power.

The situation herein stands in sharp contrast. Assuming as we must the truth of the allegations, we are faced here with the withdrawal of recognition from one union and the recognition of a competing union known to be unauthorized and unwanted by the relevant employees. *Petri* did not address the issue of whether a union whose recognition was withdrawn under such circumstances could seek damages.

Defendants point to the language in *Petri* that sections 921, 922, and 923 do not impose upon employers "an affirmative duty to bargain" (53 Cal.2d at p. 471) and "employers are not required by law to engage in collective

bargaining" (*id.,* at p. 474). We recognize that "[a]n employer faced with the union's demand for recognition still has 'the choice of yielding to the union's demands or continuing to endure the interference with its business relations which the (union's) activities caused.'" (*Id.,* at p. 471.) But we are not here dealing with a union's demand for an injunction to compel initial recognition.

In *Englund* v. *Chavez, supra,* 8 Cal.3d at p. 596, our Supreme Court pointed out that "the dictum from *Petri* relied on so heavily by the Growers appeared in a portion of that decision which held only that even when a union can prove it has the majority support of the workers, the union is not entitled to enlist the state's injunctive power *to require* the employer to bargain with it." (Italics in original.)

We recognize that SEIU cannot obtain an injunction to compel the employers herein to bargain. However, the lack of a compulsory collective bargaining rule in California does not necessarily foreclose the possibility of SEIU obtaining damages for the withdrawal of recognition of it as an exclusive bargaining representative under the circumstances of this case.

Our research has uncovered no California cases dealing with the withdrawal of recognition from a union which, by voluntary agreement, has been the authorized bargaining representative of the employees for a long period of time. Federal precedents can, however, serve as guidance by analogy.

 "[T]he language and policy of section 923 and other sections of our Labor Code are similar to that of the National Labor Relations Act (29 USC § 151 et seq.), and federal decisions in the field of labor-management relations are persuasive." (*American Radio Assn.* v. *Superior Court, supra,* 237 Cal.App.2d 891, 897.) "The parallel policies underlying section 923 and the corresponding federal statutes have led California courts to apply federal law doctrines in cases where no facts were alleged to bring the case under federal law." (*Lerma* v. *D'Arrigo Brothers Co.* (1978) 77 Cal.App.3d 836, 840-841 [144 Cal.Rptr. 18]; see also *Englund* v. *Chavez, supra,* 8 Cal.3d at pp. 589-593; *Knopf* v. *Producers Guild of America, Inc., supra,* 40 Cal.App.3d at p. 247; *Holayter* v. *Smith* (1972) 29 Cal.App.3d 326, 335 [104 Cal.Rptr. 745].) Thus, for example, in *Lerma,* the court imposed the duty of fair representation on a union with an exclusive collective bargaining agreement despite the fact that, under California law, unlike federal law, there is no statute providing for certification of the union as the exclusive collective bargaining agent.

Similarly, here, although there is no compulsory collective bargaining or certification procedure, federal doctrine governing the withdrawal of recognition after an employer's voluntary agreement to recognize and collectively bargain with a union can provide some guidance. Under federal law, regardless of whether a union is certified or voluntarily recognized as the exclusive bargaining representative, there is a rebuttable presumption that the union retains its status as the authorized representative of the majority of the employees after the expiration of the collective bargaining agreement. To withdraw recognition lawfully, the employer must affirmatively show that the union in fact did not represent a majority at the time of the withdrawal or that the employer had a reasonable doubt as to the union's continuing majority status. (See, e.g., *N.L.R.B.* v. *Tahoe-Nugget, Inc.* (9th Cir. 1978) 584 F.2d 293, 297; *N.L.R.B.* v. *Newspapers, Inc.* (5th Cir. 1975) 515 F.2d 334, 340-341; *N.L.R.B.* v. *Frick Company* (3d Cir. 1970) 423 F.2d 1327, 1330-1332; *N.L.R.B.* v. *Master Touch Dental Laboratories, Inc.* (2d Cir. 1968) 405 F.2d 80, 82-83; *Sahara-Tahoe, d/b/a/ Sahara Tahoe Hotel* (1977) 229 N.L.R.B. 1094.)

■ Analogously, though an employer under California law is not compelled to bargain with or recognize any union, once an employer voluntarily recognizes a union as the exclusive bargaining agent and establishes a collective bargaining relationship, there should be a rebuttable presumption that, even after the expiration of the collective bargaining agreement, the long recognized union is the choice of the majority of the employees and the relationship should continue. Thus, if an employer recognizes a competing union as the exclusive bargaining agent, it is presumed that the latter union is not representative of the majority will.

In *Englund* v. *Chavez, supra,* 8 Cal.3d at p. 593, our Supreme Court held that "in order to avoid the consequences of improper 'interference' with a labor organization, an employer must at least possess a reasonable, good faith belief that the union he recognizes as the exclusive bargaining agent of his employees is desired by a majority of the relevant employees. [Fn. omitted.]"

The court stated: "As the relevant federal cases in this area have recognized, . . . from a practical point of view *an employer's grant of exclusive bargaining status to a non-representative union must be considered the ultimate form of favoritism, completely substituting the employer's choice of unions for his employees' desires.* Thus, in *Garment Workers* v. *Labor Board* (1961) 366 U.S. 731, 738 . . . the United States Supreme Court declared unambiguously that '[t]he law has long been settled that a grant of exclusive recognition to a minority union constitutes unlawful support [of a

labor organization] in violation of . . . section [8(a)(2)].' Other federal cases have uniformly agreed that 'an employer violates section 8(a)(2) of the Act when he recognizes one of two competing unions as exclusive bargaining agent if, at the time of recognition, the employer had actual or constructive knowledge that a real question concerning the representation of his employees existed.' [Citations.]

"As *Petri* [53 Cal.2d 455] declared, given the similarity of the language and rationale of the state and federal acts, these federal decisions are 'persuasive' in interpreting section 1117, and in light of the uniformity of this strong federal precedent, we conclude that *an employer 'interferes with' a union within the meaning of section 1117 whenever he fails to remain neutral and grants exclusive bargaining status to a union—albeit an 'independent,' nondominated union—which he knows is not representative of his employees.*" (*Id.,* at pp. 591-592.) (Italics added.)

In *Englund,* our Supreme Court recognized that "the absence of a state certification procedure does prevent a complete parallel to the federal system and . . . the propriety of an employer's recognition of a union cannot depend upon the union's obtaining a 'certified' status." (8 Cal.3d at p. 593.) The court pointed out, however, that "[s]ince there is no comparable, definitive administrative apparatus established by state law, we believe the underlying policy of the provision can best be served by requiring that an employer have a reasonable, good faith belief in the majority status of the union which he recognizes in order to avoid 'interfer[ing] with' the union within the meaning of section 1117." (*Id.,* at p. 594, fn. 12.)

█ Section 1122 was added to the Labor Code in 1955 by the same act that amended section 1117. (Stats. 1955, ch. 1417, §§ 1, 2.) Section 1122 provides a corollary remedy for damages where one of at least two rival unions is, by the definition provided in section 1117, not a union for jurisdictional strike purposes because it is financed, interfered with, or dominated by an employer. (*Hotel & Restaurant Employees etc. Union* v. *Francesco's B., Inc.* (1980) 104 Cal.App.3d 962, 970 [164 Cal.Rptr. 109].) Since the operative language of section 1122, like that of section 1117, is substantially identical to the operative language contained in section 8(a)(2) of the federal act (29 U.S.C. § 158(a)(2)), declaring it to be an unfair labor practice for an employer to interfere with a labor organization, those federal authorities under section 8(a)(2) are equally persuasive with respect to the interpretation of section 1122. (*Knopf* v. *Producers Guild of America, Inc., supra,* 40 Cal.App.3d at p. 252.)

█ Accordingly, we hold that an employer who withdraws recognition from a union he had voluntarily recognized as the collective bargaining

agent and instead recognizes a competing union as the exclusive bargaining representative may be held liable for damages under section 1122 for employer interference unless the employer can demonstrate a reasonable good faith belief in the majority status of the latter union.

■ SEIU is a proper plaintiff with standing to sue as an entity under sections 1122 and 923. Section 1122 expressly creates a cause of action for damages for "any person injured" as the result of employer or employer association interference with an economic group. A labor organization, such as SEIU, is by definition (see § 1117) a person within the meaning of this act. ■ One of the purposes of the Jurisdictional Strike Act, of which section 1122 is a part, is the "protection of the union in its traditional use of concerted activity to improve wages and working conditions." (*Smyrniotis* v. *Local Joint Executive Bd.* (1966) 64 Cal.2d 30, 35 [48 Cal.Rptr. 725, 409 P.2d 949].) ■ The favoritism to the Teamsters alleged here necessarily adversely affected SEIU's property and organizational interests, undercutting its ability to use concerted activity on behalf of its members.

■ Moreover, section 1122 is the specific implementation of the general independent public policy contained in section 923 to proscribe any employer interference with labor's "freedom of association." (*Knopf* v. *Producers Guild of America, Inc., supra,* 40 Cal.App.3d at p. 248.) By its terms, section 923 declares a public policy to encourage negotiation through organizational representatives selected freely—without interference, restraint or coercion. That uncoerced designation is encouraged by statute in order to promote collective bargaining because California law recognizes that the individual employee is "helpless" in the face of the employer organized "in the corporate and other forms of capital control." (§ 923.) The individual's right to join with others to form and maintain a labor organization is, however, meaningless unless that collective whole—the union—can vindicate the rights created by statute. The right of the workers to freedom of association, self-organization, and designation of representatives without interference is also the right of SEIU. (*Hotel & Restaurant Employees etc. Union* v. *Francesco's B., Inc., supra,* 104 Cal.App.3d at p. 974.)

■ With these principles in mind, we turn to the particular causes of action alleged herein. The first and third causes of action actually should be combined as they both just allege a claim under sections 923 and 1122 for damages caused to SEIU by interference in the form of favoritism in withdrawing recognition from SEIU and awarding it to the Teamsters without a good faith belief that the latter union was desired by a majority of the

employees. Accordingly, the demurrer to the first cause of action can be sustained but the demurrer to the third cause of action, which incorporates the first, must be overruled.

■ The trial court properly sustained the demurrer to the second cause of action for misrepresentation or "blacklisting" under sections 1050 and 1054 because the plain and clear language of the statutes show they apply only to individual employees. Section 1054 provides for a damage remedy for the party aggrieved by a violation of the section 1050 prohibition against an employer blacklisting a former employee. It is patent that the aggrieved party must be the blacklisted employee, not a union, since the latter can neither be fired nor quit. Indeed, *Breitegger* v. *Columbia Broadcasting System, Inc.* (1974) 43 Cal.App.3d 283, 290 [117 Cal.Rptr. 699], relied upon by SEIU, recognizes that such a lawsuit is brought by an individual ex-employee.

■ The trial court, however, should have overruled the demurrer to the fifth cause of action. Combined together with the fourth cause of action, the fifth alleges employer coercion, restraint and interference with employees to compel them to withdraw their membership and association with SEIU which would amount to violation of sections 922 and 923. Such violations provide the necessary basis for civil liability by way of damages. (*Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69, 74 [86 Cal.Rptr. 401]; *Wetherton* v. *Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168, 174 [79 Cal.Rptr. 543]; *Glenn* v. *Clearman's Golden Cock Inn* (1961) 192 Cal.App.2d 793, 796 [13 Cal.Rptr. 769].) While "[n]o penalty, civil or criminal attaches for refusing to negotiate" (*Montalvo* v. *Zamora, supra,* 7 Cal.App.3d at p. 75), the employers are not free to interfere with the union's membership and the union has standing to sue for such interference with freedom of association which inevitably adversely affects its property and organizational interests.

### Disposition

The judgment dismissing the Federation as a defendant and SEIU as a plaintiff is reversed. The court is directed to overrule the demurrer to the Federation as a defendant and reinstate the Federation as a defendant in the case. The court is also directed to overrule the demurrers to the third and fifth causes of action with respect to SEIU as a plaintiff and reinstate SEIU

as a plaintiff. The demurrers to the first, second and fourth causes of action with regard to SEIU as a plaintiff are sustained.

Schauer, P. J., and Johnson, J., concurred.