[No. B085716. Second Dist., Div. Four. Jan. 22, 1996.]

INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS,
LOCAL 889, Plaintiff and Appellant, v.
LLOYD W. AUBRY, JR., as Director, etc., Defendant and Respondent;
LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION
AUTHORITY et al., Real Parties in Interest.

862

864

**COUNSEL**

Schwartz, Steinsapir, Dohrmann & Sommers, Robert M. Dohrmann, D. William Heine, Sherman, Dunn, Cohen, Leifer & Yellig, Victoria L. Bor and Martin J. Crane for Plaintiff and Appellant.

John M. Rea and Anthony Mischel for Defendant and Respondent.

Neyhart, Anderson, Reilly & Freitas, William J. Flynn, Gibson, Dunn & Crutcher, Kenneth E. Ristau, Jr., and Gunnar B. Gooding for Real Parties in Interest.

## OPINION

**KLEIN (Brett), J.\***—Local 889, International Brotherhood of Electrical Workers (IBEW) appeals from a judgment denying its petition for a peremptory writ of administrative mandate, by which it sought to overturn a decision of respondent Lloyd W. Aubry, Jr., Director of the state's Department of Industrial Relations. The director determined, after an administrative hearing, that IBEW was not entitled to represent maintenance workers employed by real party in interest Los Angeles County Metropolitan Transportation Authority (MTA) in certain job classifications in its subway and light-rail operations. A second real party in interest is Local 1277, Amalgamated Transit Union (ATU), which currently represents those workers as a portion of a wider bargaining unit.

ATU's claim to represent the rail workers derived from its preexisting representation of maintenance workers in MTA's autobus operations. When MTA began rail operations, ATU contended the positions of the rail maintenance workers should be treated as an accretion to the larger bargaining unit comprising bus maintenance workers it already represented. After a labor arbitration proceeding confirmed ATU's position, MTA and ATU entered into a collective bargaining agreement covering the rail maintenance workers and incorporating them into the existing larger bargaining unit.

Meanwhile, IBEW obtained signatures of many of the rail maintenance workers saying they wished to be represented by IBEW.

■ Under the Southern California Rapid Transit District Law of 1964 (Pub. Util. Code, § 30000 et seq.), employees have the right to organize, to form or join unions, and to bargain collectively through representatives of their own choosing. (§ 30755.) Whenever a majority of MTA employees working "in a unit appropriate for collective bargaining" indicate their desire to be represented by a particular union, MTA must bargain with that union. (§ 30750, subd. (a).) If a question arises whether a majority of employees indeed desire to be represented by the particular union, or whether a particular grouping of workers constitutes an appropriate unit, the question is submitted for determination by the Director of the Department of Industrial Relations. (§ 30751.) In making his determination, the director must apply federal labor law and federal administrative practice. (*Ibid.*)

Accordingly, in August 1990, IBEW filed a petition with the department, seeking recognition of its right to represent a bargaining unit comprising rail

---

\*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.

maintenance workers in six job classifications: rail maintenance specialist, rail maintenance assistant, rail track inspector, rail signal inspector, rail traction power inspector, and rail electronic communications inspector. ATU filed a responsive petition requesting ratification of the larger unit whose workers it already represented as the appropriate bargaining unit.

After a lengthy hearing, in December 1992 a hearing officer issued a proposed decision finding that the bargaining unit proposed by IBEW was not an appropriate unit, and that the rail maintenance classifications in question were appropriately considered an accretion to, i.e., part of, the preexisting bargaining unit comprising MTA's bus maintenance workers. (The proposed decision also rejected ATU's contention that IBEW's effort to represent the rail maintenance workers was contract-barred under Public Utilities Code section 30750, subdivision (b), which required MTA, at the time it succeeded to the property of the former Southern California Rapid Transit District, to assume and observe existing labor agreements and to recognize the unions representing employees in existing units.)

IBEW filed exceptions to the hearing officer's proposed decision. (ATU filed exceptions to the rejection of its contract-bar contention.) On October 8, 1993, the director issued his final decision and order analyzing the matter and adopting the proposed decision. Thus the director denied IBEW's petition for certification as the bargaining representative of the rail maintenance workers. (ATU's exceptions, and its own administrative petition, therefore will not be further discussed here.)

IBEW then petitioned in superior court for a peremptory writ of administrative mandate. The court denied the petition. In its written statement of decision, the court ruled, in part, that the scope of judicial review of the director's decision was the substantial evidence standard, not the independent-judgment standard. It found the director's decision was supported by substantial evidence. At the end of the seven-page statement of decision, the following two sentences appear: "The court would exercise its independent judgment differently. For the reasons stated, however, the court cannot proceed in that fashion." This appeal followed.

IBEW contends: "I. The court erroneously failed to exercise its independent judgment in reviewing the Director's decision. II. Since the superior court has already ruled alternatively that under the independent judgment test it would grant the writ of mandate, this court should remand the case to the superior court for the purpose of rendering judgment in accordance with that alternative ruling. III. Even if the substantial evidence test were the appropriate standard of review, the judgment must nonetheless be reversed

because the Director's findings are not supported by substantial evidence upon the record as a whole, and his legal analysis and conclusions are erroneous."

## I. *The Scope of Judicial Review*

The parties, recognizing the importance of this issue in this particular case, have devoted considerable attention to it.

■ When a trial court applies the independent-judgment test in reviewing an administrative agency decision, it determines whether the administrative agency's findings are supported by the weight of the evidence. (Code Civ. Proc., § 1094.5, subd. (c).) This is a kind of limited trial de novo, using the existing administrative record. (*Yordamlis* v. *Zolin* (1992) 11 Cal.App.4th 655, 659 [14 Cal.Rptr.2d 225].)

■ When a trial court applies the substantial evidence test in reviewing an administrative agency decision, it instead determines whether the agency's findings are supported by substantial evidence in the light of the whole record. (Code Civ. Proc., § 1094.5, subd. (c); *Howard* v. *County of Amador* (1990) 220 Cal.App.3d 962, 980 [269 Cal.Rptr. 807].) Conclusions of law, however, are reviewed independently. (*Ibid.*) On appeal, our function is the same as that of the trial court. (*C. E. Buggy, Inc.* v. *Occupational Safety & Health Appeals Bd.* (1989) 213 Cal.App.3d 1150, 1158 [261 Cal.Rptr. 915].)

■ In general, the independent-judgment standard is used when the administrative decision affects a right which is vested or has been legitimately acquired, and which is of a fundamental nature in light of its economic effect or other importance. (*Bixby* v. *Pierno* (1971) 4 Cal.3d 130, 137-147 [93 Cal.Rptr. 234, 481 P.2d 242] [applying the substantial evidence test to review a determination of the Commissioner of Corporations whether a proposed recapitalization plan was fair, just, and equitable].)

■ Here, the trial court was correct in its decision to apply the substantial evidence standard, for several reasons.

First, there is no case law support for use of an independent-judgment test for judicial review of an administrative determination of an appropriate bargaining unit. The labor relations cases IBEW relies on dealt not with determination of an appropriate unit, but rather with the fundamental underlying right of workers to organize and choose a bargaining representative. (E.g., *Safeway Stores* v. *Retail Clerks etc. Assn.* (1953) 41 Cal.2d 567, 573 [261 P.2d 721] [recognizing the right to organize and select a bargaining representative as fundamental labor rights, but ruling supermarket managers,

as supervisorial personnel, were not entitled to such rights]; *Service Employees International Union v. Hollywood Park, Inc.* (1983) 149 Cal.App.3d 745, 759 [197 Cal.Rptr. 316] [accord, and holding a union could maintain an action against an employer for damages for wrongfully withdrawing recognition and instead recognizing another union which lacked majority employee support].) The administrative appropriate-unit decision challenged in the present case did not impair the rail maintenance employees' rights to organize and select a bargaining representative, except in the tautological sense that every decision recognizing a particular bargaining representative necessarily displaces every other representative until such time as the recognized representative ceases to be such. (See *Santa Clara County Dist. Attorney Investigators Assn. v. County of Santa Clara* (1975) 51 Cal.App.3d 255, 264 [124 Cal.Rptr. 115] [drawing a clear distinction, in the public sector, between the right to organize and the right of a group of employees to select a separate bargaining unit].) *Kerrigan v. Fair Employment Practice Com.* (1979) 91 Cal.App.3d 43, 51 [154 Cal.Rptr. 29], cited by IBEW, is distinguishable. There a petitioner claimed a city denied him employment as an attorney solely because of his age. The court held that equal employment opportunity is a fundamental right for purposes of judicial review of an administrative agency's decisions.

Second, the most closely analogous state law principles support application of a substantial evidence test. (See *Covina-Azusa Fire Fighters Union v. City of Azusa* (1978) 81 Cal.App.3d 48, 61 [146 Cal.Rptr. 155] [a city's appropriate-unit determination regarding its firefighter employees is to be reviewed by the superior court for an abuse of discretion, and superior court should not determine on its own review of the evidence what the appropriate unit is]; *Reinbold v. City of Santa Monica* (1976) 63 Cal.App.3d 433 [133 Cal.Rptr. 874] [applying a reasonableness standard in reviewing city's unit determination excluding chief of police from bargaining unit].) In public employment areas where the Legislature has specified a test for judicial review of agency bargaining unit determinations, it prescribed the substantial evidence test. (Gov. Code, § 3520, subd. (c) [on judicial review of the Public Employment Relations Board's (PERB) appropriate-unit determinations as to state civil service employees, "The findings of the board with respect to questions of fact, including ultimate facts, if supported by substantial evidence on the record considered as a whole, shall be conclusive"]; Pub. Util. Code, §§ 3542, subd. (c) [same as to public school employees], 3564, subd. (c) [same as to state university employees].)

Third, under federal law, the National Labor Relations Board's (NLRB) appropriate-unit decisions under the National Labor Relations Act (NLRA) are not judicially reviewable at all, unless the employer refuses to bargain

and challenges the appropriate-unit decision in defending against an ensuing unfair labor practice charge. (*Boire* v. *Greyhound Corp.* (1964) 376 U.S. 473 [11 L.Ed.2d 849, 84 S.Ct. 894].) When the NLRB's appropriate-unit decision is subject to federal judicial review because of a refusal to bargain, section 10(f) of the NLRA prescribes a substantial evidence standard. (29 U.S.C. § 160(f) ["the findings of the Board with respect to questions of fact if supported by substantial evidence on the record considered as a whole shall . . . be conclusive."].)

Fourth, state courts reviewing specialized labor agencies' decisions accord them deference and exercise a limited scope of review. (See *Regents of University of California* v. *Public Employment Relations Bd.* (1986) 41 Cal.3d 601, 617 [224 Cal.Rptr. 631, 715 P.2d 590] [citing cases reviewing decisions of PERB and the American Labor Relations Board (ALRB)].) IBEW argues, correctly, that the Department of Industrial Relations comprises many divisions and boards which deal with aspects of industrial regulation other than labor-management relations, such as labor standards, occupational safety and health, and research, and the department therefore may not be as specialized as in PERB, ALRB, and NLRB. This fact, however, does not make it appropriate for us to ignore the department's legislatively created role in bargaining unit determinations.

Fifth, deference seems particularly appropriate where the matter to be decided involves a judgmental assessment of a number of relevant criteria, not all of which can be expected to point in the same direction, and the overall standard, community of interest, is not susceptible of mechanical application. Deference also seems appropriate because there may be more than one appropriate unit, so that the question is ordinarily not whether the agency identified the most appropriate unit, but rather whether it identified an appropriate one. (*N.L.R.B.* v. *Don Burgess Const. Corp.* (9th Cir. 1979) 596 F.2d 378, 387.)

Undoubtedly judges are as capable as any laypersons of evaluating specialized questions of industrial relations. We have concluded, however, that the law does not authorize us to review this question de novo.

## II. *The Merits*

■ When an appellant challenges an administrative decision as unsupported by substantial evidence in light of the record as a whole, it is appellant's burden to demonstrate that the administrative record does not contain sufficient evidence to support the agency's decision. (E.g., *Howard* v. *County of Amador, supra,* 220 Cal.App.3d 962, 980.) We have reviewed the record, the hearing officer's thorough and carefully reasoned proposed

decision, and the director's final decision and order, which for the most part adopted the proposed decision. Having done so, we have concluded that the director's determinations were amply supported by the evidence and were devoid of legal error.

■ The evaluation of what is an appropriate unit involves consideration of whether the employees of a unit are united by community of interest. In evaluating community of interest, many factors are evaluated, including bargaining history; desires of the affected employees; nature of the employer's business; similarity in scale and manner of determining earnings; similarity in employment benefits, hours of work, and other terms and conditions of employment; similarity in the kind of work performed; similarity in the qualifications, skills, and training of the affected employees; frequency of contact or interchange among the employees; geographic proximity; continuity or integration of production processes; common supervision and determination of labor-relations policy; and relationship to the employer's administrative organization. In public sector employment, additional factors to be considered are the employer's authority to bargain effectively at the level of the unit and the effect of a unit on the efficient operation of the public service. (*Santa Clara County Dist. Attorney Investigators Assn.* v. *County of Santa Clara, supra,* 51 Cal.App.3d 255, 260-261.) System-wide units are favored in public utilities.

■ MTA administratively divides its maintenance operations into a facilities maintenance department and an equipment maintenance department, not into bus and rail departments. Both of MTA's maintenance departments are involved in bus and rail operations. Many of the employees in the other ATU-represented job classifications work on rail facilities and equipment. Rail and bus maintenance is done in the same yards. Midlevel supervisors supervise both rail and bus classifications. Employees have transferred from bus positions to rail positions, using similar skills and equipment, and learning their new tasks after a moderate amount of training. The skills, duties, and working conditions of the rail maintenance employees are similar to those of the bus maintenance employees. Their interests appear to be similar. Wages, hours, other benefits, and working conditions of both are determined in similar fashion.

We reject IBEW's contention that the hearing officer, the director, and the superior court erroneously believed the rail-only unit is not an appropriate bargaining unit if it is an accretion to the existing bus-operations unit.

In *Sheraton-Kauai Corporation* v. *N.L.R.B.* (9th Cir. 1970) 429 F.2d 1352, 1356, the collective bargaining agreement covering certain classifications of

872

employees at the employer's five hotels in Hawaii contained an accretion clause providing that it would also cover all such employees in any new hotel later opened by the employer in Hawaii. The employer opened a sixth hotel, on Kauai, and the parties honored the accretion clause. The NLRB charged both employer and union with unfair labor practices, and the court ordered enforcement of the NLRB's order (although the court's opinion does not disclose the tenor of the order). The court upheld as reasonable the NLRB's policy that whenever a single-location unit is an appropriate one for collective bargaining, the employees in that unit should be given an opportunity to determine for themselves which union, if any, they wish to represent them.

*Sheraton-Kauai* is factually distinguishable on three grounds. First, there the employer and the existing union attempted to use an accretion clause in their collective bargaining agreement to forestall consideration of any other factor relevant to determination of an appropriate unit. Second, the newly added employees were working at a distinct facility located on a different island from the other facilities. Third, the case fell within the familiar pattern of a multiple-location employer adding a new location, and the employer and the union both conceded that the new location would itself be an appropriate unit. For these reasons, we do not read the case as standing for a broad principle that whenever jobs are added due to expanded operations, the added positions must be deemed the appropriate unit if the employees therein so elect, regardless of other pertinent factors.

■ Under the so-called accretion doctrine, groups of new employees can be added to an existing bargaining unit without holding a vote on their representation. (*N.L.R.B.* v. *Stevens Ford, Inc.* (2d Cir. 1985) 773 F.2d 468, 472.) The criteria used to determine whether this should be done include the usual factors considered in making appropriate-unit determinations. (*Id.* at p. 473; *Intern. Ass'n of Machinists* v. *N.L.R.B.* (9th Cir. 1985) 759 F.2d 1477, 1479.) Because no election will be held if an accretion is found, however, additional factors must first be considered: whether the new group of employees itself constitutes an appropriate unit; the size of the group to be accreted relative to the size of the existing unit; whether the group to be accreted was already in existence at the time the existing bargaining unit was recognized; the extent to which the existing unit is itself the result of prior accretions; and, of course, the views of the employees. (*Stevens Ford, supra,* at pp. 473-475.)

Thus an accretion and a unit determination involve similar considerations, but the accretion principle should be applied restrictively because it operates to deny the accreted employees a vote on their choice of bargaining representatives (as well as on their choice whether to be represented at all).

(*N.L.R.B.* v. *Security-Columbian Banknote Co.* (3d Cir. 1976) 541 F.2d 135, 140.)

IBEW argues that once it is determined that the newly added positions constitute an appropriate unit, "the inquiry is at an end, and an election should be directed." This argument has support in the case law. (See *N.L.R.B.* v. *Stevens Ford, Inc. supra,* 773 F.2d at p. 473, citing *N.L.R.B.* v. *Retail Clerks Local 588, etc.* (9th Cir. 1978) 587 F.2d 984, 987; *Retail Clerks Local 588, etc.* v. *N.L.R.B.* (D.C. Cir. 1977) 565 F.2d 769, 772 [184 App.D.C. 194].) Whether this approach should be applied in every case, regardless of other circumstances, is a question we need not decide, because here the director did not find that the rail maintenance classifications constituted an appropriate unit. He found to the contrary: "The job classifications at issue do not share a sufficient community of interest so as to constitute a separate bargaining unit; said classifications represent an accretion to the existing maintenance unit."

IBEW's position is based largely on an argument advanced by respondents before the agency and the superior court, to the effect that the question of accretion should be decided first, before considering the appropriateness of the rail positions as a separate bargaining unit. The section of the director's decision discussing the appropriate-unit factors is headed, "The job classifications at issue represent an accretion to the existing maintenance unit." The superior court, in its statement of decision, wrote: "The hearing officer [and] the Director . . . found the proposed unit to be inappropriate as it constituted an accretion to the preexisting unit."

Regardless of what arguments respondents advanced, we do not read this language employed by the agency or the superior court as demonstrating the error of law IBEW claims. Rather, the director properly considered the question whether the rail classifications IBEW sought to represent constituted an appropriate unit in light of all the relevant factors. He found they did not, and that an appropriate unit instead comprised the bus and rail maintenance classifications together.

The judgment is affirmed. Respondent and real parties to recover their costs from appellant.

Epstein, Acting P. J., and Vogel (C. S.), J., concurred.