[No. C004826. Third Dist. June 21, 1990.]

TRUSTEES OF THE CAPITAL WHOLESALE ELECTRIC COMPANY PROFIT SHARING AND TRUST FUND, Plaintiffs and Appellants, v.
SHEARSON LEHMAN BROTHERS, INC., et al., Defendants and Respondents.

COUNSEL

Howard M. Hoffman for Plaintiffs and Appellants.

Baker & McKenzie, Tod L. Gamlen and Robin L. Filion for Defendants and Respondents.

OPINION

MARLER, J.—Plaintiffs, trustees of the Capital Wholesale Electric Company Profit Sharing and Trust Fund (the Trustees), appeal from a judgment dismissing their complaint against Shearson Lehman Brothers, Inc. (Shearson)[1] after the trial court sustained Shearson's demurrer without leave to amend. The Trustees contend the trial court erred in sustaining the demurrer without leave to amend. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises out of a securities account the Trustees opened with Shearson's predecessor in interest, Lehman Brothers Kuhn Loeb, Inc., in 1979. After funds in that account were invested in option securities and lost, the Trustees brought an action in 1982 against Shearson for breach of fiduciary duty; the suit was entitled Elmore Duffy, Frank Ghilarducci, Walter Chokan, Trustees of the Capital Wholesale Electric Company Profit Sharing and Trust Fund v. King Cavalier, Lehman Brothers, Kuhn, Loeb, Inc., and Does 1 through 50 (the Duffy litigation). The Duffy litigation was tried before a jury, which returned a verdict in favor of the plaintiffs. The judgment was affirmed on appeal in Duffy v. Cavalier (1989) 210 Cal.App.3d 1514 [259 Cal.Rptr. 162]. On September 5, 1989, the California Supreme Court granted a petition for review and transferred the matter to the First District Court of Appeal, Division Three, with directions to vacate its opinion and to determine whether the action was preempted by the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C., § 1001 et seq.). The court found the action was not preempted by ERISA and again affirmed the judgment in Duffy v. Cavalier (1989) 215 Cal.App.3d 1517 [264 Cal.Rptr. 740]. A satisfaction of judgment was filed June 4, 1990.[2]

---

[1] Shearson Lehman Brothers, Inc., is the successor to Lehman Brothers Kuhn Loeb, Inc., and the predecessor to Shearson Lehman Hutton, Inc.; all are collectively referred to as Shearson herein.

[2] Shearson's motion to judicially notice this satisfaction of judgment is granted.

On December 31, 1986, the Trustees filed a second complaint in state court against Shearson, alleging the breach of the covenant of good faith and fair dealing implied in the fiduciary relationship. The case was removed to federal court, but was remanded to the superior court by order of the district court. Shearson brought a motion to dismiss for failure to state a cause of action, which was granted with 45 days to amend.

The Trustees then filed an amended complaint for tortious breach of the implied covenant of good faith and fair dealing, alleging there was an oral agreement between the parties as to the management of the account, and that although in 1980 Shearson returned approximately $7,000, which was purported to be the entire remaining amount in the account, the account remained open until at least March of 1986 and might still be open at the time the complaint was filed. The Trustees alleged Shearson undertook a course of conduct which breached the covenant of good faith and fair dealing implied in the oral agreement; this course of conduct included refusing to enter into meaningful discussions prior to the Duffy litigation, intentionally making untrue statements to harm the plaintiffs, wrongfully denying existence of the agreement, refusing to make good faith settlement offers prior to or during the Duffy litigation, and destroying evidence relevant to the breach of fiduciary duty claim. The Trustees sought compensatory damages, punitive damages, and attorney's fees.

Shearson demurred to this complaint and asked the court to take judicial notice of certain materials, including documents in the Duffy litigation, which it claimed would show the agreement between Shearson and the Trustees terminated in 1980. The trial court took judicial notice of the complaint in the Duffy litigation, sustained the demurrer without leave to amend, and dismissed the complaint.

The Trustees appealed.

### DISCUSSION

### I

■ "In reviewing a judgment of dismissal entered upon the sustaining of a demurrer without leave to amend, we treat the demurrer as admitting all material facts properly pleaded and all reasonable inferences which can be drawn therefrom. (*Buckaloo* v. *Johnson* (1975) 14 Cal.3d 815, 828 []; *Service Employees International Union* v. *Hollywood Park, Inc.* (1983) 149 Cal.App.3d 745, 757 [].) The function of a demurrer is to test the legal sufficiency of a pleading by raising questions of law. (*Buford* v. *State of*

*California* (1980) 104 Cal.App.3d 811, 818 []; *Whitcombe* v. *County of Yolo* (1977) 73 Cal.App.3d 698, 702 [].) It is error to sustain a demurrer where a plaintiff has stated a cause of action under any legal theory. (*Barquis* v. *Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103 []; *Service Employees International Union* v. *Hollywood Park, Inc., supra,* 149 Cal.App.3d 757.) But it is not an abuse of discretion to sustain a demurrer without leave to amend if there is no reasonable possibility that the defect can be cured by amendment. (*Goodman* v. *Kennedy* (1976) 18 Cal.3d 335, 349 []; *Keyes* v. *Santa Clara Valley Water Dist.* (1982) 128 Cal.App.3d 882, 885 [].) Plaintiff bears the burden of demonstrating that the trial court abused its discretion by showing in what manner it can amend its complaint and how that amendment will change the legal effect of its pleading. (*Johnson* v. *County of Los Angeles* (1983) 143 Cal.App.3d 298, 306 [].)" (*Von Batsch* v. *American Dist. Telegraph Co.* (1985) 175 Cal.App.3d 1111, 1117-1118 [222 Cal.Rptr. 239].)

## II

■ The Trustees claim the trial court erred in sustaining the demurrer without leave to amend because they stated a cause of action for tortious breach of the covenant of good faith and fair dealing implied in the oral agreement. In urging that the court erred in sustaining the demurrer, the Trustees rely on dictum in *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752 [206 Cal.Rptr. 354, 686 P.2d 1158] at pages 768-769, that suggests a tort action for breach of the implied covenant of good faith and fair dealing will lie where there is a special relationship between the parties to the contract. They claim the three elements the *Seaman's* court noted as characterizing a special relationship—public interest, adhesion, and fiduciary responsibility (*Seaman's, supra,* at p. 768)—are present here. We find it more instructive to begin with the Supreme Court's latest pronouncement on the subject of tort damages for the breach of the implied covenant of good faith and fair dealing in *Foley* v. *Interactive Data Corp.* (1988) 47 Cal.3d 654 [254 Cal.Rptr. 211, 765 P.2d 373].[3]

In *Foley* the Supreme Court affirmed the trial court's dismissal of a cause of action for tortious breach of the implied covenant of good faith and fair

---

[3] Surprisingly, the Trustees do not mention *Foley* in their opening brief. Perhaps the Trustees did not believe *Foley* would have retroactive effect, which was decided in May of 1989 when the Supreme Court held *Foley* shall be given full retroactive effect in *Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 993 [258 Cal.Rptr. 592, 772 P.2d 1059]. However, when they refer to the case in their reply brief, they cite only to the portion which addresses whether an employee may seek tort damages based on a claim he was discharged in violation of fundamental public policy (*Foley, supra,* 47 Cal.3d at pp. 665-671), not the portion that denied tort relief to the employee for breach of the implied covenant in the employment context. (*Id.,* at pp. 682-700.)

dealing after sustaining a demurrer without leave to amend. (*Foley, supra,* 47 Cal.3d at p. 700.) The high court held tort remedies were not available for breach of the implied covenant in employment contracts to employees who alleged discharge in violation of the covenant. (*Ibid.*) The court found the employer-employee relationship was not sufficiently similar to the insurer-insured relationship, in which tort remedies are allowed for breach of the implied covenant, to warrant the extension of tort remedies. (*Id.* at p. 693.) The court found reliance on dictum in *Seaman's* to extend tort remedies to employees based on a special relationship was unwarranted, as the language was at best tentative in signaling an expansion of tort remedies. (47 Cal.3d at pp. 687-688.) The court also found appellate court cases that had permitted tort remedies in the employment context had not undertaken a sufficient critical analysis of the distinctions between employment and insurance. (*Id.* at p. 689.) Without endorsing the special relationship test as the key to determining when tort remedies would be allowed, the court found the usual employment relationship did not fit the test. The court found that when an employer breached the covenant, an employee did not face the same economic dilemma as an insured facing such a breach. The employee could, and to fulfill the duty to mitigate damages must, seek another job; the insured could not find another insurer to cover the loss that had already occurred. (*Id.* at p. 692.) Unlike insurers, employers are not quasi-public entities providing protection from potential specified economic harm. (*Ibid.*) Finally, the interests of employers and employees are not necessarily at financial odds as in the case of insurance where if the insurer pays a claim its financial resources are diminished by that amount. Continuing to employ and pay an employee may be in the employer's financial interest since employers have an economic interest in retaining good employees. (*Id.* at p. 693.)

The Trustees' complaint did not allege sufficient facts to show a special relationship with Shearson enough like that of insurer-insured to justify tort damages for breach of the implied covenant. While the Trustees may claim they face the same economic dilemma of an insured, since payment of a claim would reduce Shearson's financial resources and the Trustees cannot go elsewhere to recoup the funds lost in the Shearson account, the other two elements were not and cannot be alleged. Brokerage houses are not quasi-public entities offering protection; they are commercial institutions offering a potential profit on investments. The Trustees claim they went to Shearson seeking protection for retirement funds. This is a mischaracterization: they sought to make a profit on those funds; had they been interested only in protection, there are other investments that offer guaranteed protection of principal. The financial interests of the Trustees and Shearson were not at

odds, but congruent. It is in a brokerage house's financial interest to make money on its clients' accounts.

This analysis of the special relationship test is consistent with that set forth in *Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109 [207 Cal.Rptr. 123], to which the Supreme Court referred in *Foley*. (*Foley, supra,* 47 Cal.3d at p. 691, fn. 29.) ■ In *Wallis* the court stated: "For purposes of serving as predicates of tort liability, we find that the following 'similar characteristics' must be present in a contract: (1) the contract must be such that the parties are in inherently unequal bargaining positions; (2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection; (3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party 'whole'; (4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and (5) the other party is aware of this vulnerability." (*Wallis* v. *Superior Court, supra,* 160 Cal.App.3d at p. 1118.)

■ Again, the Trustees' complaint does not allege the necessary elements to show a special relationship. Although they allege that Shearson had vastly superior financial resources and that they were required to expend sums due to Shearson's breach of its fiduciary duty, which suggest inherently unequal bargaining positions and the inadequacy of contract damages, they allege nothing to show a nonprofit motivation or a special vulnerability. Indeed, as explained above, the motivation for opening the securities account could only have been to profit, so the Trustees could not have alleged the necessary nonprofit motivation.

Finally, even under the analysis of the special relationship suggested in the *Seaman's* dictum, the Trustees would not prevail. In *Seaman's* the court noted the "special relationship" between insurer and insured was characterized by elements of public interest, adhesion and fiduciary responsibility. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 768.) Although the Trustees alleged Shearson's fiduciary responsibility, which Shearson argues terminated once the funds were returned, they did not allege elements of either public interest or adhesion. The Trustees claim that agreements used by brokers have been held, as a matter of law, to be contracts of adhesion in *Richards* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.* (1976) 64 Cal.App.3d 899 [135 Cal.Rptr. 26]. In *Richards* the court was called upon to decide whether an agreement to submit disputes to arbitration, contained in a written margin agreement and incorporating by reference the provisions of the Constitution and Rules of the Board of

Governors of the New York Stock Exchange, was unenforceable as a contract of adhesion. The court found the agreement to arbitrate under these rules was fundamentally unfair because defendant was a member of the exchange, whose rules were to apply, and the rules were not set forth in the margin agreement. (*Id*. at pp. 902, 904.) The court noted that it did not hold that all agreements to arbitrate were unfair (*id*. at p. 906); even less can the opinion be read to hold that all agreements, oral as well as written, entered into by a brokerage house and a customer, are necessarily contracts of adhesion. The Trustees cannot rely on this case to establish the element of adhesion. Further, the Trustees do not allege the oral agreement had the characteristics of a contract of adhesion; that is, that it was Shearson's standardized agreement, the terms of which were imposed by Shearson and presented to the Trustees on a take it or leave it basis. (*Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690, 694 [10 Cal.Rptr. 781].) The Trustees do not suggest there were other facts they could plead to show the element of adhesion was present in their relationship with Shearson. The burden is on the Trustees to show they could amend the complaint to allege facts sufficient to survive the demurrer. (*Von Batsch* v. *American Dist. Telegraph Co., supra*, 175 Cal.App.3d at p. 1118.)

Since the Trustees did not allege facts sufficient to show the special relationship necessary for tort damages for breach of the implied covenant, under any formulation of the special relationship test, and they have not shown how they could amend their complaint to allege such facts, it was not an abuse of discretion for the trial court to sustain Shearson's demurrer without leave to amend and to dismiss the complaint.

## III

In opposition to the demurrer the Trustees relied on *White* v. *Western Title Ins. Co.* (1985) 40 Cal.3d 870 [221 Cal.Rptr. 509, 710 P.2d 309], as well as *Seaman's*. In *White* the Supreme Court held an insurer's duty of good faith and fair dealing survives the onset of litigation and evidence of the insurer's conduct during litigation is admissible to show the insurer's breach of the covenant of good faith and fair dealing. (*Id*. at pp. 885-889.) The Trustees claim the implied covenant of good faith and fair dealing continued after the Duffy litigation began, because the securities account which was the subject of the oral agreement remained open. In response Shearson contended *White* did not apply because it was limited to the insurance context, as the court held in *Palmer* v. *Ted Stevens Honda, Inc.* (1987) 193 Cal.App.3d 530, 539 [238 Cal.Rptr. 363]. Which of these two cases controlled was the subject of a hearing on the demurrer. The trial

court agreed with Shearson, and the minute order sustaining the demurrer cites *Palmer*.

The Trustees contend the trial court erred in relying on *Palmer*; they claim that case is distinguishable and this case is closer to *White*. In *Palmer* the issue was whether defendant's litigation tactics were admissible in an action for bad faith denial of the existence of a commercial contract to sell a car on consignment. The court held they were not, refusing to extend *White* beyond the insurance context. (*Palmer* v. *Ted Stevens Honda, Inc., supra*, 193 Cal.App.3d at p. 539.) The court held that in the context of a commercial contract, once litigation commenced, actions taken in defense were not probative of the defendant's bad faith. (*Ibid.*) In distinguishing *White*, the *Palmer* court relied on two bases. First, it recognized *White* was based on the special relationship between an insurer and the insured, which relationship is absent in the ordinary commercial contract. (*Id.* at p. 538.) Second, the court noted the agreement between Palmer and the Honda dealership terminated prior to the litigation, whereas in *White* the court noted the contractual relationship between insurer and insured usually continues even after litigation over a claim begins. (*Ibid.*)

The Trustees claim here there is a continuing contractual relationship because the securities account remained open after the Duffy litigation commenced; accordingly, they contend *White* controls instead of *Palmer*. Assuming the Trustees are correct that *White* would control in a noninsurance commercial context where there is a continuing contractual relationship, it would only permit the admission of evidence of conduct after litigation commences if that conduct constituted a cause of action. That cause of action is lacking here; the Trustees have failed to properly state a valid cause of action for tortious breach of the implied covenant of good faith and fair dealing, regardless of whether the alleged breach occurred prior to or during the Duffy litigation.

IV

■ In their opposition to the demurrer below the Trustees claimed the complaint was sufficient, but stated that if there was a technical defect in the complaint, they would be "pleased" to amend the complaint to correct it. In their opening brief on appeal they take the same position, contending the complaint is adequate but stating a willingness to amend if necessary. In their reply brief, perhaps realizing they have failed to state a cause of action for tortious breach of the implied covenant, the Trustees for the first time claim they have stated a contract cause of action for breach of the implied covenant and therefore the trial court should have simply struck the tort

damages or permitted them to amend to state a contract claim rather than sustaining the demurrer without leave to amend.

Although a plaintiff need not request leave to amend in order to preserve on appeal the issue of whether the court abused its discretion in sustaining a demurrer without leave to amend (Code Civ. Proc., § 472c), the plaintiff does have the burden on appeal to show how the trial court abused its discretion in sustaining the demurrer. (*Sullivan* v. *City of Sacramento* (1987) 190 Cal.App.3d 1070, 1081 [235 Cal.Rptr. 844].) The Trustees have failed to carry that burden. At no time before filing their reply brief did the Trustees suggest they were relying on the adequacy of the complaint to state a contract cause of action; no reason for the failure to present this argument before is given. ■ The general rule is that points raised for the first time in a reply brief will not be considered unless good cause is shown for the failure to present them before. (*Balboa Ins. Co.* v. *Aguirre* (1983) 149 Cal.App.3d 1002, 1010 [197 Cal.Rptr. 250]; 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 496, p. 484; see also *Solano Concrete Co.* v. *Lund Constr. Co.* (1976) 64 Cal.App.3d 572, 575-576 [134 Cal.Rptr. 552].) Since the Trustees have failed to show good cause, we will not consider the new point.[4, 5]

V

■ Shearson claims this appeal is totally devoid of merit and requests an award of attorney's fees under Code of Civil Procedure section 907 and rule 26(a) of the California Rules of Court as sanctions for the Trustees' frivolous appeal. In *In re Marriage of Flaherty* (1982) 31 Cal.3d 637 [646 P.2d 179], at page 650, the Supreme Court set forth the standard for determining when an appeal is frivolous and sanctions should be imposed: "an appeal should be held to be frivolous only when it is prosecuted for an

---

[4] We note the Trustees might find difficulty in stating a valid cause of action for contractual breach. The statute of limitations for breach of an oral contract is two years (Code Civ. Proc., § 339, subd. (1)) and commences at the time of the breach (*Niles* v. *Louis H. Rapoport & Sons* (1942) 53 Cal.App.2d 644, 651 [128 P.2d 50]). Shearson raised the statute of limitations as one ground for the demurrer. Therefore, any contract cause of action based on conduct that occurred more than two years prior to the filing of the complaint on the last day of 1986— which certainly includes all conduct the Trustees allege occurred prior to the Duffy litigation and probably many of the acts thereafter—would be barred. Further, to the extent that the alleged breach arises out of the same factual situation as the Duffy litigation and could have been raised in that action, res judicata would bar the second suit. (*Duffy* v. *City of Long Beach* (1988) 201 Cal.App.3d 1352, 1357-1358 [247 Cal.Rptr. 715]; *Kronkright* v. *Gardner* (1973) 31 Cal.App.3d 214, 217 [107 Cal.Rptr. 270].)

[5] At oral argument the Trustees urged they had a valid cause of action for intentional spoliation of evidence, based on the allegation Shearson destroyed certain evidence. This point, too, is raised too late to merit consideration.

improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit. [Citation.]" While we have found no merit in the Trustees' contentions, we find no evidence in the record that the appeal was prosecuted solely for an improper motive. Nor do we believe the appeal, which we dispose of primarily on the basis of case law developed after the notice of appeal was filed and not on the case cited by the trial court or the materials which Shearson requested be judicially noticed, falls within the narrow category for which sanctions are appropriate. Accordingly, we decline to award Shearson attorney's fees.

## DISPOSITION

The judgment is affirmed.

Carr, Acting P. J., and DeCristoforo, J., concurred.

A petition for a rehearing was denied July 18, 1990, and appellants' petition for review by the Supreme Court was denied September 17, 1990. Mosk, J., was of the opinion that the petition should be granted.