Filed 6/22/16  P. v. Palacio CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C075901 |
| v. | (Super. Ct. No. 12F07578) |
| FRANCIS MARTIN PALACIO, | |
| Defendant and Appellant. | |

A jury convicted defendant Francis Martin Palacio of kidnap for purposes of rape (Pen. Code, § 209, subd. (b)(1), count one),[1] three counts of forcible sexual penetration (§ 289, subd. (a)(1), counts two, three, and four), two counts of rape (§ 261, subd. (a)(2), counts five and six), and one count of oral copulation (§ 288a, subd. (c)(2), count seven). The jury also found true the allegation defendant committed the sex offenses after kidnapping the victim.  The trial court stayed imposition of sentence for the kidnapping

---

[1]     Undesignated statutory references are to the Penal Code.

1

for purpose of rape under section 654 and sentenced defendant to serve 90 years to life in prison on the remaining counts.

On appeal, defendant contends (1) his motion to suppress DNA evidence should have been granted, (2) the trial court erred in imposing consecutive sentences for the offenses (other than the kidnap for purposes of rape) because they were committed at the same time and with a singular purpose, and (3) his sentence amounts to cruel and unusual punishment under the California and federal Constitutions.

After the completion of briefing, defendant requested permission to file a supplemental brief addressing the issue of his presentence custody credits. We granted the request. Defendant's appellate counsel subsequently informed us the issue has been resolved. Accordingly, we do not address the issue of defendant's presentence custody credits.

As to the issue of defendant's suppression motion, we deem it forfeited for failure to first present in the trial court the arguments he now seeks to advance on appeal. As to the consecutive sentences, we conclude section 667.6 requires that his conviction for oral copulation (count seven) be imposed consecutive to the remaining sex offense sentences. With regard to the remaining offenses for forcible sexual penetration and rape (counts two through six) that were committed on the same occasion against the same victim, we conclude the record does not support the imposition of consecutive sentences. Here, the record does not show defendant had a reasonable opportunity to reflect between the commission of these sex offenses. Accordingly, we must remand for resentencing on these counts. Because we remand for resentencing, we do not address defendant's claim his 90-years-to-life sentence amounts to unconstitutionally cruel and unusual punishment.

2

BACKGROUND

*Prosecution Evidence*

On the evening of July 12, 2012, Jane Doe[2] and her sisters planned to have dinner and watch a movie with their mother. Doe was disappointed when she received a call that her mother had gotten drunk and passed out. As was her custom when she became upset, Doe went outside for a walk at around 10:00 p.m. Around 10:00 or 10:30 p.m., Doe stopped to use the bathroom at a gasoline station. She then continued walking for several hours, eventually heading southbound on Walerga Road in Sacramento and passed Steve's Liquor and Food. Doe continued walking uphill on Walerga toward the bridge and encountered a man -- whom she later identified as defendant -- walking downhill toward her.

Defendant stopped her and asked her why she was out there. Doe responded that she was out for a walk. Defendant asked where she lived, and she responded vaguely. He then asked her name, and Doe gave only her first name. Defendant responded that his name was Marcus. Defendant then told Doe it was not safe to be walking in that area. When Doe tried to end the conversation and walk away, defendant put out an arm to keep her from walking past him. He then asked for a hug. When Doe moved to step around him, defendant grabbed her and tried to kiss her. Defendant then pushed her over the guardrail. Doe landed on her back and defendant climbed over the guardrail and on top of her.

As Doe lay on her back, defendant held her down by her neck and choked her. Doe tried to scream but she could not breathe. Her vision became blurry and she thought

---

**2** The trial court granted the prosecution's pretrial motion to seal the victim's name and have the parties refer to her as Jane Doe. For the sake of consistency, we also refer to the victim as Jane Doe.

she was going to pass out. This happened three or four times. Defendant unbuttoned Doe's jeans and pulled them halfway down. She was still wearing her underwear, bra, and shirt.

Doe tried to wave her hands to attract attention. She stuck her left arm under the guardrail to motion toward two cyclists on the other side of the street but they did not see her. Defendant pulled her arm back underneath the guardrail. Grabbing Doe by her hair and an arm, defendant dragged her 10 to 15 feet down the hill away from the road. Doe tried to crawl back up the hill, but defendant put his hands on her throat. Defendant then grabbed her by the hair and smashed her face into the ground. Doe stopped struggling for a minute because she "couldn't see."

As defendant held Doe's hair, he turned her around so she was facing him and he unzipped his pants. He pulled his pants to his knees. Defendant put his penis into Doe's mouth as she was in a half-sitting position and told her "to suck him until he got hard." But Doe was crying too hard and tried to pull away.

Defendant pushed her back onto the ground and Doe landed on her back. Defendant put one hand back on her throat and held her down. He then pulled her pants all the way off. Defendant also pulled her underwear down.

Defendant held Doe down with one hand on her throat and put two fingers into her vagina as she lay on her back. Doe struggled to get away. So she turned onto her side. Defendant let go of her throat and grabbed her hair. He turned her onto her stomach while his fingers remained in her vagina. Doe testified defendant was "telling me to shut the fuck up every time I tried to scream for help." Defendant put his fingers into Doe's vagina a total of three times. He then took his fingers out of her vagina and inserted a finger into her anus. Doe testified he then put his fingers back into her vagina "at the same time. It was just all in the same moment."

4

During the assault, defendant tried to kiss Doe a couple of times on the lips. Defendant turned Doe back over and lay down on top of her. He bit the side of Doe's neck and then bit her left breast. He bit her so hard she thought she was bleeding. Defendant pushed her down and inserted his penis into her vagina. He put his hands back on Doe's throat. At some point, defendant's penis came out of Doe's vagina and she tried to get away. Defendant put his penis back into her vagina two or three times while he held her down by her throat. Approximately four to five minutes elapsed while defendant inserted and withdrew his penis from Doe's vagina.

Doe started praying out loud, "Jesus help me." Defendant withdrew his penis from her, held onto her, and asked what she was doing. Doe did not respond but instead continued praying out loud. Defendant got up, kicked her in the back of her head three times, and left. Doe waited a minute to make sure defendant was gone and then she crawled to the road. She waved to a car, but it did not stop. She located her cell phone at the bottom of the hill and immediately called 911.

Sacramento County Sheriff's Deputy James Knacke arrived at the scene to find Doe curled up on the ground and crying hysterically. Doe was transported first to Mercy San Juan Hospital, then to Sutter Roseville for a sexual assault examination. Sexual assault nurse examiner Stacy McCoy took blood and urine samples from Doe. McCoy also took notes of Doe's statements and examined her for injuries. Doe stated she had not had sexual intercourse during the five days prior to the assault. She also stated her throat hurt when she swallowed and the back of her head felt like it was bruised from being kicked. Doe described being pushed over the railing and choked by defendant.

When asked about sexual penetration, Doe stated defendant "removed his penis to reinsert it at least twice. And he penetrated her vagina with more than one finger, removed and reinserted three or four times." McCoy testified her notes indicated Doe

5

said, " 'When I was rolled on my stomach, he had his hands in my butt and vagina,' end quote. And, further, penetrated her anus with his fingers, removed and reinserted three or four times." Doe also stated defendant had put his penis into her mouth. Additionally, Doe reported defendant " 'rubbed himself against me until he got hard,' end quote. And then, quote, 'When I tried to get away, he would squeeze my neck and throat tighter,' end quote."

McCoy noted several abrasions on Doe's body and several on her neck. Doe's neck was slightly swollen. McCoy found debris and vegetation in the area of Doe's genitals. Doe's hymen was tender and reddened. Among other injuries, Doe had superficial lacerations at the fossa and posterior fourchette.

McCoy took sample swabs from Doe's lips, left breast, neck, vagina, buttocks, anus, and rectum. She also took a control swab from Doe to establish Doe's DNA profile. After completing the examination, McCoy transferred Doe to the care of an emergency room physician because of the symptoms of strangulation.

In July 2012, Doe met with a sheriff's department sketch artist and they composed an image of the assailant. A copy of the sketch was shown to the jury. Doe also identified defendant as the assailant during trial.

Kristin Bejarano, a criminalist with the Sacramento County District Attorney's Laboratory of Forensic Services, testified she was able to extract DNA from the foreign material bite left neck swab and from the foreign material lip swab. In addition to Doe's DNA, Bejarano discovered both swabs contained the presence of a DNA profile belonging to a male. During trial, the jury was informed the parties stipulated defendant "was connected with this crime by a search of the DNA database. [Defendant] was in this database because he was previously arrested for a nonviolent, nonsex-related crime."

6

In October 2012, Sacramento County Sheriff's Deputy Bradley Jones received information that biological evidence from the case had been matched to defendant. Deputy Jones also obtained defendant's last known address at 8303 Walerga Road, Apartment 1, in Sacramento, California. The distance between the address and the scene of the crime is 2.8 miles. The deputy obtained a photograph of defendant and prepared a photographic lineup with a total of six photos he showed to Doe. Doe immediately eliminated 4 photos, leaving photo numbers 2 and 5. Of photo number 5, which depicted defendant, she said that "the eyes are right" but it would help if she could see the actual person move.

Defendant was arrested in November 2012. Deputy Jones showed defendant three photographs of Caucasian women, one of which showed Doe. After waiving his *Miranda* rights, defendant denied having sex with any of the women shown in the photographs. He stated he had not had sex with a White woman since 2006 or 2007. Deputy Jones obtained a search warrant that authorized his collection of a DNA sample from defendant.

Kristie Abbott, a criminalist with the Sacramento County District Attorney's Laboratory of Forensic Services, testified as an expert on DNA analysis. She extracted and compared the DNA samples taken from Doe after the assault and defendant after his arrest. She concluded the DNA profiles taken from defendant and the two sample swabs taken from Doe matched. Abbott explained the match would be expected "to occur at random among unrelated individuals in approximately 1 in 520 billion of the African-American population; 1 in 750 trillion of the Caucasian population; and 1 in 540 trillion of the Hispanic population."

### Defense Evidence

Judy Malmgren, a forensic nurse examiner, testified on behalf of the defense as an expert in sexual assault nursing examinations. Malmgren testified it was inconsistent

7

to report being bitten so hard the wound would bleed but have no visible teeth marks. It was also inconsistent to report having a person's whole face smashed into the ground but see no visible injuries to the nose, mouth, or face. Malmgren also explained it appeared inconsistent to see no damage to Doe's fingernails when she claimed she was clawing at the ground in an effort to get away. However, Malmgren agreed an injury on the posterior fourchette is the most commonly injured place on a sexual assault victim.

The defense also called Adam Gracia as a witness. Gracia stated he and Doe engaged in consensual vaginal sex using a condom on the night before he left town, which was four days before Doe was sexually assaulted. They also engaged in oral sex without a condom. That same evening, Gracia and Doe decided they would take a break. Gracia called Doe on the evening of the sexual assault but she did not answer the phone. Gracia turned off his cell phone for the next several days. When Gracia turned his phone back on he discovered several messages from Doe -- including a message that she loved him and he did not need to return to town in order to rescue her. In her first voicemail message, however, she sounded frantic and was crying hysterically.

Approximately a week after Gracia returned to town, Doe told him about the sexual assault. In the months after the assault, Gracia stayed at Doe's residence. Gracia saw that any time Doe fell asleep, she would cower and say, "No, no, no" over and over. When she woke up, Doe would begin to cry. It was a behavior Gracia had never observed in Doe before the sexual assault.

### Trial Court Ruling

As to counts two through seven (sexual penetration, rape and oral copulation counts), the trial court stated: "And I make the following findings as to each and every count: [¶] The defendant had an opportunity to pause and reflect, and yet he continued to attack and continued the assault. [¶] [Doe] continued to resist, and [defendant] for his

own gratification repositioned her, repositioned himself, and continued to assault [Doe] notwithstanding her pleas of 'stop,' 'don't,' 'no' that the assault continued. [¶] The jury was given specific jury verdict forms so that it was very clear for any appellate court that was to review this case, and [the prosecutor] did, in fact, elect during her closing argument. And the purpose of that was so that a reviewing court can determine whether this was just one continuous aberrant source of behavior or were these separate independent acts. [¶] This Court finds that they were separate independent acts. And, as such, I am required by the law to impose consecutive sentencing, and that is what I intend to do."

The trial court stayed count one (kidnap for purposes of rape) under section 654 because count one is an alternative to the kidnapping allegations the jury found true as to the remaining counts. With respect to counts two through seven, the trial court sentenced defendant to serve an indeterminate term of 15 years to life for each count consecutive for a total of 90 years to life.

DISCUSSION

I

***Motion to Suppress the Evidence of Defendant's DNA Profile***

Defendant argues the trial court erred in denying his motion to suppress evidence of his DNA profile obtained incident to a prior arrest for carrying a concealed weapon. We deem the argument forfeited.

Defendant's suppression motion was based *solely* on his argument that his arrest was not for a serious crime for which DNA collection is allowed under *Maryland v. King* (2013) ___ U.S. ___ [186 L.Ed.2d 1]. On appeal, he argues for the first time the prosecution did not meet its burden of proof in establishing probable cause for his prior arrest and insufficient evidence was provided to show when his DNA was collected. The argument has not been preserved for review because it was not first raised in the trial

9

court.  As the California Supreme Court has held, a defendant forfeits a Fourth Amendment claim "by not making a specific and timely objection on this ground [in the trial court]."  (*People v. Turner* (1994) 8 Cal.4th 137, 177, disapproved on other grounds in *People v. Griffin* (2004) 33 Cal.4th 536, 555, fn. 5.)  This holding reflects the well settled rule that "questions relating to the admissibility of evidence will not be reviewed on appeal in the absence of a specific and timely objection in the trial court *on the ground sought to be urged on appeal*."  (*Turner, supra*, 8 Cal.4th 137, italics added.)  In other words, "objections to evidence must state specific grounds for exclusion, and the grounds cannot be changed on appeal."  (*People v. Williams* (1976) 16 Cal.3d 663, 667, fn. 4.)  Because defendant did not challenge the sufficiency of the evidence offered by the prosecution to establish probable cause or the timing of the arrest when his DNA was collected, the argument has not been preserved for review.

As to the contention defendant's arrest was not for the type of serious offense for which DNA may be collected, we deem it waived.  In the opening brief, defendant acknowledges that "the issue appears to have been made moot by a subsequent decision of the Ninth Circuit Court of Appeal[s].  (*Haskell v. Harris* ([9th Cir.] 2014) 745 F.3d 1269.)"  Thus, he waived any argument for reversal on this ground.  Defendant's attempt to challenge the validity of *Haskell v. Harris* for the first time in his reply brief comes too late to properly raise the issue.  " 'The general rule is that points raised for the first time in a reply brief will not be considered unless good cause is shown for the failure to present them before.'  (*Trustees of Capital Wholesale Electric etc. Fund v. Shearson Lehman Brothers, Inc.* (1990) 221 Cal.App.3d 617, 627.)"  (*Alfaro v. Community Housing Imp. System & Planning Ass'n, Inc.* (2009) 171 Cal.App.4th 1356, 1393.)  That rule applies here.  Defendant's arguments regarding the denial of his motion to suppress are not cognizable on appeal.

10

# II

## *Consecutive Sentences under Section 667.6*

Defendant asserts that, except for his conviction of kidnap for the purpose of rape, the trial court erred in imposing consecutive sentences under section 667.6, subdivision (d), for his six other convictions. Specifically, he argues the acts underlying each of the convictions, other than kidnap for rape, were committed on a single occasion against a single victim and without a reasonable opportunity to reflect. We conclude that, except for the count of conviction for oral copulation, the trial court erred in imposing consecutive sentences for the forcible sexual penetration and rape convictions.

## A.

## *Section 667.6, Subdivisions (d) & (e)*

Section 667.6, subdivision (d), provides in pertinent part that "[a] full, separate, and consecutive term shall be imposed for each violation of an offense specified in subdivision (e) if the crimes involve separate victims or involve the same victim on separate occasions. [¶] In determining whether crimes against a single victim were committed on separate occasions under this subdivision, the court shall consider whether, between the commission of one sex crime and another, the defendant had a reasonable opportunity to reflect upon his or her actions and nevertheless resumed sexually assaultive behavior. Neither the duration of time between crimes, nor whether or not the defendant lost or abandoned his or her opportunity to attack, shall be, in and of itself, determinative on the issue of whether the crimes in question occurred on separate occasions." As relevant to this case, the offenses of rape, oral copulation, and sexual penetration are subject to the consecutive terms imposed by section 667.6 because they are listed in subdivision (e). (§ 667.6, subds. (e)(1), (7), (8).)

As this court has previously noted, imposition of consecutive sentences under section 667.6 for sex offenses committed on separate occasions does not require a break of any specific temporal duration or any change in location.  (*People v. Garza* (2003) 107 Cal.App.4th 1081, 1092 (*Garza*).)  "Once a trial judge has found under section 667.6, subdivision (d), that a defendant committed offenses on separate occasions, we may reverse only if no reasonable trier of fact could have decided the defendant had a reasonable opportunity for reflection after completing an offense before resuming his [or her] assaultive behavior."  (*Ibid.*)

In *Garza*, consecutive sentences were affirmed on the basis the defendant in that case "had an adequate opportunity to reflect upon his actions between the time he inserted his finger in the victim's vagina and the commission of the first rape.  During this interval, defendant (1) began to play with the victim's chest; (2) put his gun on the back seat; (3) pulled the victim's legs around his shoulders[;] and, finally, (4) forced his penis inside her vagina."  (*Garza*, *supra*, 107 Cal.App.4th at pp. 1092–1093.)

Also instructive is the affirmance of consecutive sentences in *People v. Plaza* (1995) 41 Cal.App.4th 377.  *Plaza* involved a forcible oral copulation in the victim's bathroom.  Defendant stopped his sexually assaultive behavior by then moving the victim into the bedroom where defendant grabbed her by the throat, removed her underwear, and digitally penetrated her.  (*Id.* at p. 384.)  Defendant again stopped his sexually assaultive behavior to listen to the victim's answering machine and punched the wall.  (*Ibid.*)  "Only then did he commit another act of oral copulation."  (*Ibid.*)  Although the defendant did not get up, he again stopped his sexually assaultive behavior by removing his penis from the victim's mouth, slapping her face and calling her names for about five minutes before he kicked her legs apart and raped her.  (*Id.* at pp. 384–385.)  As the *Plaza* court held, the pause between sexually assaultive behaviors -- such as the change in location and

12

defendant's telephone calls -- compelled the imposition of consecutive sentences under section 667.6.  (*Ibid.*)

By contrast, consecutive sentences imposed under section 667.6 were reversed in *People v. Pena* (1992) 7 Cal.App.4th 1294 (*Pena*).  The *Pena* court reversed the consecutive sentences imposed for rape and oral copulation where the evidence showed defendant raped the victim, then "got off of her, twisted her by the legs violently, and orally copulated her."  (*Id.* at p. 1299.)  The *Pena* court held defendant "simply did not cease his sexually assaultive behavior, and, therefore, could not have 'resumed' sexually assaultive behavior."  (*Id.* at p. 1316.)  The court in *People v. Corona* (1988) 206 Cal.App.3d 13 came to a similar conclusion.  In *Corona*, the defendant kissed the victim, removed her pants, kissed her again, put his finger into her vagina, kissed her genitals, raped her, stopped, got out of the car, returned five minutes later, and raped her again. (*Id.* at p. 15.)  Although the *Corona* court upheld consecutive sentences for the two rapes, it reversed consecutive sentences for the sex crimes preceding the first rape because "there was no cessation of sexually assaultive behavior" to afford the defendant "a reasonable opportunity for reflection."  (*Id.* at p. 18.)

**B.**

***Defendant's Sexually Assaultive Acts***

At trial, the prosecution expressly elected the specific acts committed by defendant for the various charged offenses.  We recount them here -- not in the order listed in the charging document -- but according to the chronological order in which defendant committed them.

Count one charged the kidnap for purposes of rape when defendant dragged the victim away from the road to get her out of the view of the public thoroughfare.

Count seven charged the oral copulation when defendant put his penis into Doe's mouth.  He stopped his *sexually* assaultive behavior because Doe was crying

13

too hard to orally copulate him. Defendant then pushed her onto the ground and onto her back. He put a hand on her throat, held her down, and pulled her pants all the way off. This break between the sexually assaultive behavior involving the oral copulation and later sexual assaults means section 667.6, subdivision (d), applies to compel the sentence for count seven to be consecutive to the other later sexual offenses committed against Doe.

Count two involved "[p]enetration of the vagina by [defendant's] fingers on this first occasion." Count four involved defendant's digital penetration of Doe's anus. Count three involved "the second time, the second occasion the defendant put his fingers in [Doe]'s vagina." Count five charged rape for "the penis in the vagina the first time." And Count six charged rape for "the penis in the vagina the second time." As to these counts, the trial court stated, "[a]nd I make the following findings as to each and every count: [¶] The defendant had an opportunity to pause and reflect, and yet he continued to attack and continued the assault. [¶] [Doe] continued to resist, and [defendant] for his own gratification repositioned her, repositioned himself, and continued to assault [Doe] notwithstanding her pleas of 'stop,' 'don't,' 'no' that the assault continued."

The trial court's reasoning does not withstand scrutiny. With the exception of the minute during which she could not see, Doe struggled during the entirety of the incident. The fact Doe struggled does not shed light on whether defendant had an adequate opportunity to reflect upon his actions between his sexual assaultive behaviors. That Doe was repositioned does not conclusively establish defendant had an opportunity to reflect. (*Pena*, *supra*, 7 Cal.App.4th at p. 1299 [the fact victim was "flipped" did not separate sexually assaultive behavior for purposes of consecutive sentences under section 667.6].) Though defendant did reposition Doe, he did so *while* his fingers remained in her vagina. The repositioning did not divide an ongoing sexual penetration into more than one crime. And the victim offered no testimony that allowed the parsing of the sexually assaultive

14

behaviors after the oral copulation. She testified defendant then put his fingers back into her vagina "at that same time. It was just all in the same moment." There was also no separation in time or location between defendant's insertion of his fingers into Doe's vagina and anus. So too, the record indicates no temporal or spatial separation between the sexual penetrations and the subsequent insertions of his penis into her vagina. Although four to five minutes elapsed while defendant inserted and withdrew his penis from Doe's vagina, no opportunity for reflection appears in the record.

The record also does not indicate any temporal or spatial difference between the first and second rapes. Instead, Doe's testimony portrayed the behavior after the oral copulation as a vicious but continuous and unbroken sexual assault. She testified that he "still had his hands" on her throat. She was "trying to get away" and was "continuing to struggle during that time."

Under section 667.6, the trial court erred in imposing consecutive sentences for the sexually assaultive behaviors committed after the oral copulation. Thus, one of the counts of sexual penetration or rape should have been imposed consecutively to the oral copulation and kidnapping for purposes of rape while the remaining counts of sexual penetration and rape should not have been consecutively sentenced. Accordingly, we remand for resentencing.

### III

### *Cruel and Unusual Punishment*

Defendant contends his sentence of 90 years to life constitutes unconstitutionally cruel and unusual punishment under the California and federal Constitutions. Our conclusion that he must be resentenced obviates the need to consider the issue.

### DISPOSITION

The matter is remanded to the trial court for resentencing consistent with Penal Code section 667.6, subdivision (d), and this opinion for defendant's conviction for oral

15

copulation (count seven) to be imposed consecutive to the remaining sex offenses for forcible sexual penetration and rape (counts two through six) that were committed on the same occasion against the same victim.  The clerk of the superior court is then directed to prepare a new abstract of judgment and to forward a certified copy of the same to the Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

_____/s/_____
HOCH, J.

We concur:

_____/s/_____
BLEASE, Acting P. J.

_____/s/_____
BUTZ, J.